UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EFREN MORENO,

          Plaintiff,

    v.

CAPITAL BUILDING MAINTENANCE &
CLEANING SERVICES, INC.,

          Defendant.

Case No. 19-cv-07087-DMR

**ORDER ON MOTION FOR
PRELIMINARY APPROVAL**

Re: Dkt. No. 29

On October 28, 2019, Plaintiff Efren Moreno filed a class and collective action complaint against Defendant Capital Building Maintenance & Cleaning Services, Inc, alleging violations of the Fair Labor Standards Act ("FLSA"), the California Labor Code ("Labor Code"), and the California Unfair Competition Law ("UCL"). [Docket No. 1.] Plaintiff filed a first amended complaint and a second amended complaint on December 27, 2019 and September 22, 2020, respectively. [Docket Nos. 9, 22 ("SAC").] The parties now seek preliminary approval of a class action settlement. [Docket No. 29 ("Mot.").] The court held a hearing on January 28, 2021. Following the hearing, the court ordered Plaintiff to submit additional briefing, which he filed on February 18, 2021. [Docket No. 32, Supplemental Brief ("Supp. Br.").]

For the reasons stated below, the motion for preliminary approval is granted.

## I.    BACKGROUND

### A.    Allegations and Claims

Defendant is a California corporation that provides various labor services throughout Northern California, including window washing, construction cleanup, floor maintenance, pressure washing, trash removal, and graffiti removal, among others. SAC ¶¶ 4, 14, 17. Defendant's janitorial work is largely performed in tenant-occupied buildings while its construction cleanup

work is done on construction sites, usually in buildings that are not currently tenant-occupied. *Id.* ¶ 17. Plaintiff is a former unionized employee of Defendant. *Id.* ¶ 5. He and Defendant's other employees received an hourly wage rate negotiated by their representatives in the Northern District Council of Laborers. *Id.* ¶ 18.

Plaintiff alleges that Defendant improperly calculated his overtime wages based on a reduced regular rate rather than the actual regular rate set by his union contract. SAC ¶¶ 18-22. For example, Plaintiff's regular rate of pay in 2016 was $22.73 per hour but his overtime rate was only $27.00 per hour. *Id.* ¶ 22. Because overtime is paid at 1.5x the regular rate of pay, Plaintiff's overtime rate was essentially calculated based on a rate of $18.00 per hour rather than his actual rate of $22.73 per hour. *See id.* Plaintiff would usually receive one check and wage statement for his regular hours and a separate check and wage statement for his overtime hours. *Id.* The wage statement for his overtime hours did not list his regular rate of pay. *Id.* ¶¶ 22, 25. Plaintiff also alleges that Defendant's pay system does not properly record all hours worked. SAC ¶ 24. Specifically, the system rounds time into half hour intervals rather than reflecting the actual amount of time worked. *Id.* As a result, workers are not paid for all the hours they work. *Id.*

The SAC proposes a Rule 23 class of employees defined as:

> All hourly employees of CAPITAL BUILDING MAINTENANCE & CLEANING SERVICES, INC. who worked for Defendant in California within four years of the filing of the original complaint in this action through the date of the action's final disposition who were members of an affiliate of the Northern California District Council of Laborers and who received two wage statements one of which did not properly list the union designated regular rate of pay.

SAC ¶ 26 ("Class Members"). Plaintiff also seeks to represent a FLSA collective composed of:

> All hourly employees of CAPITAL BUILDING MAINTENANCE & CLEANING SERVICES, INC. who worked more than 40 hours in a given workweek for Defendant and were employed within four years of the filing of the original complaint in this action through the date of the action's final disposition and who were members of an affiliate of the Northern California District Council of Laborers and who received two wage statements one of which did not properly list the union designated regular rate of pay.

SAC ¶ 27 ("Collective Members"). At the hearing, Plaintiff explained that both the Class and the Collective are comprised of the same 25 individuals.

Plaintiff brings claims for (1) failure to pay minimum wage and overtime in violation of FLSA, 29 U.S.C. §§ 207, 216(b), and 255(a); (2) failure to pay minimum wage and failure to pay for all hours worked in violation of Labor Code §§ 1194, 1194.2, 1197 and the Industrial Welfare Commission ("IWC") Wage Orders; (3) failure to pay the wage rate designated by statute or contract in violation of Labor Code § 223; (4) waiting time penalties pursuant to Labor Code § 203; (5) failure to provide accurate wage statements in violation of Labor Code § 226; (6) violation of the UCL, California Business & Professions Code §§ 17200 *et seq.*; (7) declaratory relief; and (8) civil penalties under California's Private Attorneys General Act ("PAGA"), Labor Code §§ 2699 *et seq.*

**B.     Procedural History**

Because Plaintiff filed this action before the expiration of the PAGA administrative exhaustion period, the initial complaint omitted Plaintiff's PAGA claims. Mot. at 2. Once that period expired, Plaintiff filed a first amended complaint ("FAC") as a matter of right and added the PAGA claims. *Id.* Shortly after Plaintiff filed the FAC, Defendant's counsel reached out to Plaintiff's counsel to discuss early resolution of the case. [Docket No. 29-2, First Declaration of Joseph D. Sutton ("First Sutton Decl.") ¶ 16.] The parties agreed to participate in a full-day mediation with mediator Jeffrey Ross. *Id.* In preparation for the mediation session, and with the assistance of Ross, the parties agreed on an informal exchange of discovery. *Id.* Defendant provided a sampling of timekeeping and payroll documents for approximately 100 employees and payroll summaries/reports for the 25 employees who received had received two paychecks with two different rates of pay during the same pay period. *Id.*; Mot. at 2. Defendant also produced an anonymized list of those 25 employees that contained their dates of employment and rates of pay. *Id.*

Based on the records produced by Defendant, Plaintiff's counsel was able to calculate the wages owed to the employees who received two paychecks with "reasonable certainty." First Sutton Decl. ¶ 17. The sampling of records from the larger group of employees (i.e., those who had not received two paychecks) allowed Plaintiff to investigate the rounding error claim. *Id.* Plaintiff ultimately determined that there was "a dearth of documentary evidence regarding the claims alleged on behalf of workers who had not received two paychecks" for one pay period. *Id.* As a result, the

3

parties stipulated to amend the complaint again to redefine both the Rule 23 and the FLSA collective class as employees who received two paychecks during the same pay period. *Id.* Thus, both classes consist of the 25 individuals who received two paychecks and the proposed settlement covers only the claims of those employees. *Id.*

On July 30, 2020, the parties engaged in a full-day mediation with Ross. First Sutton Decl. ¶ 18. At the mediation, the parties negotiated a settlement for the 25 employees who received two paychecks between October 28, 2015 through the date of the preliminary approval of the settlement. *Id.* Plaintiff now asks the court to approve the settlement that was reached following mediation.

## II.     TERMS OF THE SETTLEMENT

Under the terms of the settlement agreement, Defendants will pay a gross settlement amount of $325,000, none of which will revert to Defendant. [Docket No. 32-1, Second Declaration of Joseph D. Sutton ("Second Sutton Decl."), Ex. 1 ("Agreement") §§ 22, 56.] The Agreement provides that Defendant will deposit the entire $325,000 with the settlement administrator ("Administrator") within 30 days after the Effective Date, which is 30 days after the court issues an order of final approval if there are no timely objections to the Agreement.[1] Agreement § 41(a). Within 30 days after the Effective Date, the Administrator will pay (1) Moreno a Class Representative service award of up to $5,000, (2) Plaintiff's counsel costs of up to $10,000 and fees of up to $108,322.50; and (3) the Labor & Workforce Development Agency ("LWDA") PAGA penalties of $7,500. Agreement §§ 56, 62(a). The gross settlement amount does not include required employer payroll tax contributions, which Defendant will pay separately. Agreement § 56. Up to $10,000 from the total settlement fund will be used to cover the costs of settlement administration. *Id.* § 56(c).

After the above amounts are deducted from the gross settlement amount, Defendant will pay $45,657.63 to the Collective Members, which will be distributed based on a calculation of each

---

[1] The Agreement provides that, if any Class Member files a valid and timely objection, the Effective Date will instead be 65 days after (1) notice of the court's final approval order has been served on all objectors and the parties to the action, if no appeals are filed or (2) entry of an order by a reviewing court affirming the final approval order or denying review after any objectors exhaust all of their appellate remedies. Agreement § 41(c).

Collective Member's actual FLSA overtime damages. First Sutton Decl. ¶ 22; Agreement §§ 58, 60. The Administer will distribute $2,500 to the PAGA pool workers, which represents 25% of the total amount allocated for PAGA penalties. Agreement § 56(d). Class Members who are no longer employed by Defendant will receive a total of $18,000 to settle their claims for waiting time penalties under Labor Code § 203, which will be distributed in equal shares. Agreement §§ 21, 59. From the remaining settlement amount, Rule 23 Class Members will receive settlement shares based on the total number of weeks each Class Member worked during the Class Period. First Sutton Dec. ¶ 21; Agreement § 59.

Once the court preliminarily approves the Agreement, Defendant will provide the Administrator with a list of class members that includes their last known contact information. Agreement § 68. The Administrator will update the listed addresses using the National Change of Address database and will mail a notice packet to each of the 25 Class Members. The notice packet will include a copy of the Class Notice; a share form providing each Class Member's expected settlement share; a consent form to join the FLSA Collective Class; and an opt-out form. *Id.* § 25; *see id.*, Exs. A-D. The notice packet will be mailed via first class mail. *Id.* § 68(c)(ii). If a notice is returned because of an incorrect address, the Administrator will search for a current address using reasonable and cost-effective skip trace methods. *Id.* § 68(c)(iii). If a current address is found, the Administrator will re-mail the notice. *Id.*

Class Members must opt out or object by the Notice Response deadline, which is 60 days after the Class Notice is mailed. Agreement §§ 26, 62. If a Class Member opts out, the settlement share for that Class Member will be distributed to the Class Members who do not request to be excluded. *Id.* § 59. Collective Members can opt into the FLSA settlement by completing the "Consent to Join Collective Action" form. *See id.*, Ex. C. The shares of any Collective Members who do not opt in will be redistributed *pro rata* to the Collective Members who affirmatively opted in. *Id.* § 60.

The share form will provide each Class Member with an estimate of the number of weeks they worked during the Class Period, the formula for determining their share of the settlement, the estimated amount of their share, and instructions on how to challenge the number of work weeks

reflected on the Share Form.  Agreement § 68(c)(ii)(2).  Class Members may challenge their expected shares solely on the basis that the workweeks reflected in the share form are inaccurate.  First Sutton Decl. ¶ 23; Agreement § 64.  In order to lodge a challenge, a Class Member must complete a Challenge Form received from the Administrator and submit the form to the Administrator within 45 days after the mailing of the Class Notice.  Agreement § 64; *id.*, Ex. B.  After receiving a Challenge Form, the Administrator will consult with counsel for both parties and resolve the challenge based on the records and documents provided by Defendant and the challenging Class Member.  *Id.* § 64. The Administrator's decision will be final, binding, and non-appealable.  *Id.*

Class Members must cash their settlement check within 180 days after they receive it.  Agreement § 66.  Any uncashed compensation will be donated to Community Legal Services in East Palo Alto, the designated *cy pres* recipient.  *Id.* § 66(iii).  For the purposes of taxes, the settlement payments will be characterized as 20 percent wages, 60 percent penalties, and 20 percent interest.  *Id.* § 67.  Wage payments will be subject to all required withholdings and will be reported on a W-2 and/or a 1099 Form.  *Id.*

## III.    PRELIMINARY APPROVAL

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions."  *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  The settlement of a certified class action must be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "The court's role in reviewing a proposed settlement is to represent those class members who were not parties to the settlement negotiations and agreement."  *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016).  At the preliminary approval state, the court's role is to assess whether the settlement "falls within the range of possible approval."  *Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 4283420, at *1 (N.D. Cal. Sept. 7, 2018) (internal quotation marks and further citations omitted).

The court will look to two authorities in deciding whether to grant preliminary approval of the Rule 23 class claims: (1) the fairness factors set forth in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361

F.3d 566, 575 (9th Cir. 2004); and (2) the factors in Rule 23(e)(2). "The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court will also consider the Northern District of California's Procedural Guidance for Class Action Settlements.[2]

For the FLSA claims, "a district court must determine whether the settlement represents a fair and reasonable resolution of a bona fide dispute." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (internal quotation marks and citation omitted). As part of its fairness analysis, the court should consider the following factors:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Id.* at 1173.

## A. *Churchill* Factors

A class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (citation omitted). The district court's role in reviewing proposed class action settlements is to determine whether a settlement is "fundamentally fair, adequate, and reasonable." *Id.* The court is tasked with balancing a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

---

[2] Available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

United States District Court
Northern District of California

*Churchill*, 361 F.3d at 575.

### 1. Strength of Plaintiff's Case and Risks of Litigation

The first three factors are addressed together and require the court to assess the plaintiff's "likelihood of success on the merits and the range of possible recovery" versus the risks of continued litigation and maintaining class action status through the duration of the trial. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). However, the court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625. These factors weigh in favor of approving settlement when the defendant has "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015).

The SAC alleges Defendant did not use employees' union rate of pay, as reflected in the governing Collective Bargaining Agreement ("CBA"), in calculating their overtime rate but instead used a lower, non-union rate. SAC ¶¶ 8-9. For employees who performed different types of work with different regular rates during the same pay period, Defendant allegedly failed to use the weighted average of all regular rates in calculating an overtime rate. *Id.* ¶¶ 7-8; *see* 29 C.F.R. § 778.115. Defendant then provided employees with two separate checks and wage statements—one for each employee's regular rate and hours and a second for the employee's overtime rate and hours. SAC ¶¶ 20-22. The wage statements for the overtime hours did not list the employees' regular rates. *Id.* ¶ 22. Defendant also allegedly had a timekeeping policy that failed to accurately record employees' hours worked by rounding their start and end times. *Id.* ¶¶ 6, 24. The current settlement only releases the claims related to the two-paycheck issue, as Plaintiff ultimately determined that there was little evidence supporting the rounding error claim. *See* First Sutton Decl. ¶ 17.

While Plaintiff and his counsel assert that these claims are meritorious, they concede there are issues in the case that could reduce or eliminate class recovery. First, a central issue in the case is whether Plaintiff's claim under Labor Code § 223 is preempted under section 301 of the Labor Management Relations Act ("LMRA"). *See* Supp. Br. at 3-4. Plaintiff contends that preemption

does not apply to this case, citing *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131 (2019); however, Plaintiff acknowledges that there are factual distinctions between *Sarmiento* and this case. *Id.* at 3-4. Further, *Sarmiento* specifically recognized that "other district courts have taken somewhat divergent approaches in applying LMRA section 301 preemption to Labor Code section 222 and 223 claims." 367 F. Supp. 3d at 1145-46 (citing cases). Preemption therefore appears to be a plausible defense that weighs in favor of approving settlement. *See In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. at 999. Second, the CBA at issue contains a grievance procedure that requires arbitration of claims arising under FLSA, the Labor Code, and Wage Order 16. Supp. Br. at 4. If the court determined that the CBA's arbitration clause is valid and enforceable, the Class and Collective Members would be forced to individually arbitrate their non-PAGA claims, which would likely reduce the overall recovery since "typically only a fraction of individuals pursue arbitration." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1123 (N.D. Cal. 2016).

The record establishes that there is substantial risk to class and collective recovery if the case were to proceed further in litigation. Accordingly, the first three *Churchill* factors weigh in favor of preliminary approval.

### 2. Amount Offered in Settlement

The fourth *Churchill* factor, which looks at the amount of recovery offered in settlement, also favors preliminary approval. When considering whether the amount offered in settlement is fair and adequate, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. In addition, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Under the terms of the Agreement, Defendant will pay a gross non-reversionary amount of $325,000, which will be allocated as follows:

| Class Representative incentive award | $5,000 |
|---|---|

| | |
|---|---|
| Attorneys' fees | $108,322.50 |
| Costs | $10,000 |
| Administrator's fees and expenses | $10,000 |
| PAGA penalties | $10,000 |
| Collective Member claims | $45,657.63 |
| Class Member claims | $136,019.87 |
| **Total** | $325,000.00 |

Below, the court analyzes the reasonableness of the settlement amounts that will be distributed to Class and Collective Members; the reasonableness of the incentive award, attorneys' fees and costs, and Administrator's fees are examined elsewhere.

### a.     FLSA Collective Claims

Plaintiff alleges that Defendant is liable under FLSA for failing to pay overtime wages based on a weighted average and for liquidated damages. First Sutton Decl. ¶¶ 9-10. The Agreement pays 100% of the overtime alleged owed over the last four years, which totals $45,657.63. Agreement §§ 58, 60; Docket No. 29-6, First Declaration of Tomas E. Margain ("First Margain Decl.") ¶ 24. The parties did not allocate any amount to liquidated damages, the exposure for which is calculated at $36,374.79. *Id.* ¶ 21. Sutton represents that "[a] decision to not pay the FLSA liquidated damage amount and instead distribute the remainder to the Rule 23 class was made to more evenly distribute the funds among the Class." First Sutton Decl. ¶ 34. In his supplemental briefing, Plaintiff provides further support for not allocating any amount to liquidated damages under FLSA, including:

> (a) establishing liability for liquidated damages is not guaranteed; (b) it is also not guaranteed that all workers will choose to opt in to the FLSA claim since the vast majority—approximately 20 workers—are current employees who may be reticent to submit a consent to join a lawsuit against their current employer; (c) shares allocated to workers who decide to not become members of the FLSA Collective will be redistributed to those who do become members; and (d) the FLSA amount is calculated over a 4-year liability period and the issue of whether the UCL extends the FLSA recovery period could be litigated and appealed.

Supp. Br. at 2.

The court finds that the amount offered with respect to the FLSA claims is fair and reasonable. The Agreement pays 100% of the overtime wages owed, so Collective Members will receive all the actual damages they suffered as a result of Defendant's alleged FLSA violations. Although no amounts are allocated to liquidated damages, Plaintiff's arguments on this point are compelling. The Class and Collective have identical membership, meaning that allocating more to the Class claims does not deprive Collective Members of recovery that they would otherwise receive. Also, given that workers are required to opt in to the Collective and not to the Rule 23 Class, there is less of a barrier to receiving settlement shares as part of the Rule 23 Class. In any case, the court has discretion to award lower or no liquidated damages if the employer is able to show that the challenged action was taken in good faith, so it is not patently unreasonable to exclude liquidated damages from the settlement agreement. *See* 29 U.S.C. § 260.

In sum, the relief provided for the FLSA Collective is fair and adequate.

### b.     Rule 23 Class Claims

The total amount offered in settlement for the Rule 23 Class claims is $136,019.87, which includes $18,000 earmarked for former workers who allege claims for waiting time penalties. Agreement § 59. By comparison, Class counsel estimate that the total Class exposure (minus FLSA claims and PAGA penalties) is $396,387.43, which includes unpaid wages, waiting time penalties, and statutory damages for wage stubs violations. Margain Decl. ¶ 21.

***Unpaid Wages.*** Plaintiff's claim for unpaid wages under Labor Code § 223 has a total estimated value of $303,433.93. Margain Decl. ¶ 21. Plaintiff asserts that the settlement fairly discounts the total value of this claim because of the risks associated with that claim. As explained above, Defendant would have argued that Plaintiff's section 223 claim is preempted by the LMRA. While at least one recent case found that a section 223 claim was not preempted, that court also recognized that courts have taken "divergent approaches" in applying LMRA section 301 preemption to such claims. *See Sarmiento*, 367 F. Supp. 3d at 1145-46. If the court found that Plaintiff's claim is preempted, he and the putative Class would receive nothing for the alleged section 223 violations. Further, also explained above, Defendant could have plausibly argued that Plaintiff's non-PAGA claims are subject to binding arbitration, which could have eliminated the

11

possibility of litigating those claims as a class action in federal court. Given these risks, the court finds that the settlement fairly accounts for Plaintiff's claims under section 223.

*Waiting Time Penalties.* At the hearing, the parties represented that there are five Class Members who are no longer employed by Defendant and have claims for waiting time penalties under Labor Code § 203. The total estimated exposure for waiting time penalties under section 203 is $35,953.50. First Sutton Decl. ¶ 31; *see also* First Margain Decl. ¶ 21. The court asked why these five Class Members are not receiving a larger share of the settlement given that they have an additional claim. *See* Docket No. 31. In response, the parties revised the Agreement to explicitly allocate $18,000 to section 203 penalties, which will be split evenly between the five Class Members with section 203 claims. Agreement §§ 21, 59. Thus, the settlement accounts for over half of the total possible recovery for waiting time penalties. The section 203 claim is derivative of the section 223 claim, discussed above, and is therefore subject to the same risks—including preemption and arbitration—that could reduce or eliminate the potential recovery. Accordingly, the court finds that the settlement reasonably and fairly pays 50% of the total value of the section 203 claim.

*Wage Stub Violations.* Plaintiff also asserts a claim under Labor Code § 226 for wage statement penalties. They estimate that this claim has a value of $57,000. Margain Decl. ¶ 21. However, Plaintiff represents that this claim is "hotly contested" because Defendant argues that the wage statements at issue accurately reflect the amounts actually paid to the employees and therefore do not violate section 226. Supp. Br. at 5; *see also Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018) (holding that wage statement penalties could not be awarded where the wage stubs accurately reflected the hours worked at each rate, even though it was later determined that the plaintiffs were owed more). This defense appears to be at least plausible, making it reasonable to discount the value of the wage statement claim for the purposes of settlement. Further, the section 226 claim is also derivative of the section 223 claim. If the arbitration and/or preemption arguments succeeded with respect to the section 223 claim, Plaintiff and the Class might receive no recovery for their wage statement claim.

In sum, the Agreement awards $136,019.87 to Class Members out of an estimated $396,387.43 total exposure (approximately 34% of the total value). In light of the substantial relief

12

1  awarded under the Agreement and the risks associated with further prosecution of these claims, the

2  court finds that the amount allocated to settling the Rule 23 Claims is reasonable.

3                **c.**        **PAGA Penalties**

4        The Agreement allocates $10,000 to settling Plaintiff's PAGA claims. Agreement § 29.

5  LWDA will receive 75% of this amount, while the remaining 25% will be apportioned among the

6  Class. Plaintiff estimates that the total PAGA exposure is $415,401.90. First Margain Decl. ¶ 21.

7  Thus, the PAGA settlement represents approximately 2.4% of the total value of the PAGA claim.

8  The court ordered Plaintiff to provide supplemental briefing that provides "[s]upport for the amount

9  allocated toward PAGA penalties, citing relevant caselaw." [Docket No. 31.]

10        Although there is no "specific benchmark for PAGA settlements, either on their own terms

11  or in relation to the recovery on other claims in the action," district courts in the Ninth Circuit have

12  evaluated PAGA settlements using the Rule 23 standard for evaluating settlements. *Ramirez v.*

13  *Benito Valley Farms, LLC*, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) (citation omitted);

14  *see also Jordan v. NCI Grp., Inc.*, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) ("[T]he Court

15  will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair,

16  adequate, and reasonable in light of PAGA's policies and purposes."). When a proposed settlement

17  encompasses both a Rule 23 class and PAGA claims, "the Court must closely examine *both* aspects

18  of the settlement." *O'Connor*, 201 F. Supp. 3d at 1134 (emphasis in original). Accordingly, the

19  court "must evaluate the adequacy of compensation to the class *as well as* the adequacy of the

20  settlement in view of the purposes and policies of PAGA." *Id.* (emphasis in original). Courts have

21  also employed a "sliding scale," under which a "robust" settlement of the Labor Code class claims

22  may justify a "greater reduction in PAGA penalties." *Haralson v. U.S. Aviation Servs. Corp.*, 383

23  F. Supp. 3d 959, 972 (N.D. Cal. 2019).

24        In this case, the court has already examined the recovery for the Rule 23 class claims and

25  found that it was adequate in light of the risks of further litigation. As explained above, some of

26  Defendant's arguments (if successful) could leave the class with little to no recovery. Under such

27  circumstances, a settlement that accounts for over a third of the total possible recovery is reasonable.

28  Because the Class will receive substantial relief on the Rule 23 claims, the "purposes of PAGA may

    be concurrently fulfilled." *See O'Connor*, 201 F. Supp. 3d at 1134 ("By providing fair compensation

to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA."). In addition, while the PAGA recovery represents approximately 2.4% of the total estimated value of the PAGA claims, courts have approved PAGA settlements of lower percentages where the class recovery was otherwise fair and adequate.[3] *See, e.g.*, *Jennings v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018) (approving a PAGA settlement of 0.6% of its total value because of the "risks of no recovery"); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (finding a PAGA settlement of 0.15% the verdict value reasonable "in the context of the settlement as a whole"). Further, Plaintiff's counsel submitted the proposed settlement agreement to the LWDA on December 4, 2020. *See* First Sutton Decl. ¶ 20 n. 2. Thus, the LWDA has had ample time to weigh in and express any concerns about the Agreement. The lack of comment from the LWDA weighs in favor of finding that the PAGA settlement is reasonable. *See Jordan*, 2018 WL 1409590, at *3 ("[T]he Court finds it persuasive that the LWDA was permitted to file a response to the proposed settlement and no comment or objection has been received."). For all of these reasons, the court finds that the PAGA settlement is fair and adequate in view of the purposes of the statute.

In sum, the amount offered in settlement weighs in favor of preliminary approval.

### 3. Stage of Proceedings

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *DIRECTV, Inc.,* 221 F.R.D. at 528; 4 Newberg at § 11.24. "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding

---

[3] *Haralson* and other decisions have advised particular caution about PAGA settlements of less than 1% of the total value of a PAGA claim. *See Haralson*, 383 F. Supp. 3d at 972-73 (citing cases). The PAGA settlement proposed here exceeds that benchmark and therefore does not invoke the additional concerns examined in *Haralson*.

of the legal and factual issues surrounding the case." *Id.* (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)). However, "[i]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988, at *8 (N.D. Cal. July 8, 2019) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

This case was filed in October 2019 and settled as a result of a full-day mediation in July 2020. The parties agreed to an informal exchange of discovery prior to mediation. First Sutton Decl. ¶ 16. The discovery included a sampling of timekeeping and payroll documents for the rounding issue, and payroll summaries/reports for all members of the FLSA class, over 1,500 pages total. *Id.* The sampling method allowed Plaintiff to calculate the amount of wages owed with "reasonable certainty," as well as determine that there was insufficient evidence to pursue a claim based on the alleged rounding errors. *Id.* ¶ 17. Thus, although this case was settled relatively early and without substantial litigation or formal discovery, it appears that the parties had "sufficient information to make an informed decision about settlement." *Id.*

This factor weighs in favor of granting preliminary approval.

### 4.      Experience and Views of Counsel

Moreno is represented by counsel from Advocates for Worker Rights LLP ("Advocates") and Justice at Work Law Group, LLP ("Justice at Work"). Advocates was founded in October 2018 by attorneys Marco A. Palau, Joseph D. Sutton, and Eric S. Trabucco, all of whom are counsel in this case. Sutton Decl. ¶ 3. Sutton represents that the firm is "dedicated to representing low wage workers in wage theft and other wage-and-hour matters and operates with the purpose of providing access to justice for workers traditionally deprived of legal services due to barriers such as cost and language, as well as a lack of knowledge of their labor rights." *Id.* The three founding members have over 25 years combined experience in wage-and-hour class and representative actions. *Id.* Advocates has litigated numerous wage-and-hour actions in state and federal courts throughout California. *Id.*

Thomas E. Margain of Justice at Work has practiced wage and hour litigation since 1998.

15

First Margain Decl. ¶¶ 3-4.  He has appeared in hundreds of cases in both state and federal court and has litigated nine class action lawsuits as lead counsel. *Id.* ¶¶ 10-11.  The majority of his federal cases allege FLSA violations and about 95% of his total practice involves wage and hour litigation. *Id.* ¶ 10.

The court is satisfied that counsel have provided adequate representation on behalf of the class.

### 5.      Government Participant

This factor is inapplicable because there is no government participant in this case.  *See Mendoza v. Hyundai Motor Co., Ltd*, No. 15-cv-01685-BLF, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

### 6.      Reaction of Class Members

The reaction of the class members is best assessed at the final approval hearing since the court can look at how many class members submitted claim forms and objections.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming approval of a class action settlement where there were 54 objections out of 376,301 notices sent).  Therefore, this factor should not be considered in preliminary approval.

### B.      Rule 23(e) Factors

Rule 23(e) requires the court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

16

### 1.    Adequacy of Representation

In determining whether to approve a class action settlement, a court must consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

### a.    Class Representative

Plaintiff's counsel represents that Moreno, as a class representative, "believes the Settlement is fair and reasonable in the best interest of the Class" and that his "interests in this litigation are coextensive with the interests of the proposed settlement class." First Sutton Decl. ¶ 37. There are no indications that Moreno has failed to adequately represent the interests of the class. Further, as described above, class counsel are experienced and competent, which is another indication that Moreno has adequately represented the class. *See In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

The court finds that this factor is satisfied.

### b.    Class Counsel

The experience of counsel is discussed in Section III.A.4, *supra*.

### 2.    Non-Collusive Negotiations

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez*, 563 F.3d at 965. Where a class has not yet been certified, a proposed settlement agreement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "[T]he mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *Id.* at 948.

The Ninth Circuit has laid out three factors to consider when determining whether there are signs that class counsel "have allowed pursuit of their own self-interests . . . to infect negotiations. *Bluetooth*, 654 F.3d at 947. These are (1) "when counsel receive a disproportionate distribution of

the settlement or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) when the payment of attorneys' fees is "separate and apart from class funds"; and (3) when the parties arrange for benefits that are not awarded to revert to the defendants rather than being added to the class fund. *Id.*

The first factor is not present here. Each Class and Collective Member will receive a significant monetary benefit. As addressed further in Section III.B.3, *infra*, although the requested attorneys' fees exceed the 25% benchmark in a common fund case, they are not in any way suggestive of collusion. The court will address the exact amount of fees to be awarded in the order for final approval.

As for the second factor, the attorneys' fees request in this case is calculated as a percentage of the total recovery. Thus, there is no "clear sailing" provision that would weigh against approval of the settlement.

The third *Bluetooth* factor is not present here because no amount of the settlement fund will revert to Defendant.

### 3. Adequate Relief

In considering whether class relief is adequate, a court must consider:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3) . . .

Rule 23(e)(2)(C).

### a. Costs, Risks, and Delay of Trial and Appeal

The cost and risk of continued litigation is discussed in Section III.A.1, *supra*.

### b. Relief Distribution

Rule 23 requires the court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "[N]otice must be

'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

### i.       Notice

Under the Agreement, notice will be provided to class members via first class mail at their last known address. Agreement § 68(c)(i). If a mailing is returned due to an incorrect address but contains a forwarding address, then the Administrator will re-mail the notice packet to the forwarding address. *Id.* § 68(c)(iii). If a Class Notice is returned without a forwarding address, the Administrator will search for a current address using effective skip trace methods. *Id.* If a current address is found, the Administrator will re-mail the Class Notice.[4] *Id.*

In the hearing, the court identified several issues with the proposed Class Notice. Primarily, the Notice did not clearly delineate between the Rule 23 Class claims and the FLSA Collective claims. For example, the Notice did not explain that Collective Members must opt in to receive settlement benefits for the FLSA claims and did not provide a form for that process. Accordingly, the court instructed the parties to revise the Notice to "explain[] the difference between the Rule 23 class action and the FLSA collective action, and inform[] putative class and collective members of the consequences of opting in to the FLSA collective action, opting out of the Rule 23 class action, or doing nothing." [Docket No. 31.] The revised Notice addresses these concerns. *See* Agreement, Ex. A. It describes the difference between a class and collective action in some detail. *Id.* at 4-5. It also explains the different options for receiving a monetary award for the Class claims, the Collective claims, or both/neither. *Id.* at 2. The consequences of each choice, including what recovery is available and which claims are released, are detailed in plain language. *See id.* at 5, 7. The revised Notice makes clear that receiving any recovery for FLSA claims requires a potential Collective Member to fill out and return the "Consent to Join Collective Action Form," which is included as part of the notice packet. *Id.*; *see* Agreement, Ex. C. The Notice also explains how to

United States District Court
Northern District of California

---

[4] The parties represented in the hearing that there are no anticipated difficulties in contacting the 25 Class and Collective Members, since the union has their recent contact information.

19

request exclusion from the Rule 23 Class. *Id.* at 8. Thus, the revised Notice adequately addresses the court's concern about distinguishing between the different kinds of claims at issue and informing Class/Collective Members of their rights with respect to each claim.

Consistent with the court's order following the hearing, the revised notice also (1) accurately reflects the amount of administrator's fees provided for in the Agreement; (2) instructs Class Members who wish to opt out to submit only the information necessary to opt out of the settlement, in conformance with the Guidelines; and (3) instructs Class Members who wish to object to the settlement to send their written objections only to the court, in conformance with the Guidelines. *See* Docket No. 31.

The court finds that the revised proposed Notice adequately informs Class/Collective members of their rights and options.

### ii. Claims Process

Another consideration is whether the claims process is burdensome to the class members. In this case, Class Members who do not opt out of the Rule 23 class and who do opt in to the FLSA collective will automatically receive their share of the settlement funds. This factor weighs in favor of preliminary approval.

### c. Attorneys' Fees

"District courts must be skeptical of some settlement agreements put before them because they are presented with a bargain proffered for approval without benefit of an adversarial investigation." *Hanlon*, 150 F.3d at 1021 (internal quotations and citations omitted). "These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.* "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Bluetooth*, 654 F.3d at 942. The benchmark for a reasonable fee award as a percentage of the common fund is 25%. *Id.* Courts may also cross-check the amount by using both methods. *See Mendoza v. Hyundai Motor Co., Ltd*, No. 15-cv-01685-BLF, 2017 WL 342059, at *14 (N.D. Cal. Jan. 23, 2017).

In this case, class counsel will request, and Defendants will not oppose, attorneys' fees and expenses of up to $108,322.50, which represents one third of the gross settlement amount. Agreement § 56(a). This request exceeds the 25% benchmark for a reasonable fee award in a common fund case. However, for the purposes of preliminary approval, the attorneys' fees request is not clearly unreasonable. In the motion for final approval, Plaintiff's counsel must fully brief their entitlement to attorneys' fees under both the percentage of recovery and lodestar methods.

### 4. Equitable Treatment of Class Members

Courts have approved settlement plans that pay monetary benefits based on the comparative strengths and weaknesses of certain claims. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), ECF No. 526 at 4-5.

In this case, the Agreement will compensate the Collective Members for 100% of their actual FLSA overtime damages such that workers who accrued more uncompensated overtime will receive larger payments. First Sutton Decl. ¶ 22; First Margain Decl. ¶ 24. Similarly, the Rule 23 Class Members will receive settlement shares based on the total number of weeks each Class Member worked during the Class Period, which means that workers with more underpaid overtime will generally receive more monetary benefits under the settlement.[5] First Sutton Decl. ¶ 21. The distribution of the $2,500 in PAGA penalties is also based on how many pay periods each Class Member worked, which fairly accounts for the disparate harms they suffered. *See* First Margain Decl. ¶ 24. Each former worker will receive an equal share of the $18,000 set aside to settle their claims for waiting time penalties under Labor Code § 203.[6] Agreement § 59. Thus, the payments

---

[5] During the hearing, the court asked why the FLSA claims will be reimbursed at 100% while the other claims settled for about a third of their total value. The parties represented that the FLSA overtime damages are easier to calculate and more definite based on Defendant's records, while the Labor Code claims are derivative of the FLSA claims and less certain given Defendant's arbitration and preemption defenses. Because the FLSA claims are stronger and the damages are more easily calculated, it is reasonable to allocate a greater percentage of the settlement funds to the FLSA claims. Further, since the Class and Collective have identical membership, there is less concern that settling the FLSA claims for a higher percentage is unfair to the Class Members, since Class Members are all also entitled to receive their share of the FLSA settlement.

[6] In reviewing the first version of the settlement agreement, the court noted its concern that former workers with claims for waiting time penalties under Labor Code § 203 were not receiving a larger

for each set of claims is based on the proportionate harm suffered by each Class/Collective Member.

Based on these considerations, the court finds that the settlement reasonably allocates payments based on the relative strengths and weaknesses of each claim.

**C.    FLSA Factors**

In deciding whether to approve a proposed FLSA settlement, a district court must determine whether "(1) the case involves a bona fide dispute; (2) the proposed settlement agreement is fair and reasonable; and (3) the award of costs is reasonable." *Estorga v. Santa Clara Valley Transportation Auth.*, No. 16-cv-02668-BLF, 2020 WL 7319356, at *3 (N.D. Cal. Dec. 11, 2020).

**1.    Bona Fide Dispute**

A bona fide dispute requires "some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims." *Heath v. Google LLC*, No. 15-cv-01824-BLF, 2019 WL 3842075, at *4 (N.D. Cal. Aug. 15, 2019); *see also Jennings*, 2018 WL 4773057, at *4 ("A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." (citation omitted)).

Here, Plaintiff explains that the FLSA claim hinges on Defendant's practice of paying workers both a union and non-union rate. Supp. Br. at 2. Overtime pay is calculated based on an employee's "regular rate of pay," which has to factor in both union and non-union rates if employees engage in work that is covered under the CBA and work that is not. *Id.* According to Plaintiff, the parties dispute which kinds of work are covered by the CBA. Supp. Br. at 2-4. If the case were to proceed, the parties would have to litigate this issue and Plaintiff's interpretation of "covered work" under the CBA might fail. This risk presents a bona fide dispute and also makes the 100% recovery for FLSA claims an exemplary result.

**2.    Reasonable Factors**

Before approving a FLSA settlement, a district court "must determine whether the settlement

---

portion of the settlement despite having additional claims. The revised Agreement addresses this concern as it sets aside $18,000 of the settlement for just those workers, which is about half the total value of the section 203 claims. *See* Agreement § 59; Supp. Br. at 5. Thus, the workers with an additional claim under section 203 will reasonably receive a greater monetary payment under the Agreement.

is a fair and reasonable resolution of a bona fide dispute . . . ." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (Cousins, J.). Factors the court should consider include:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016). These factors are essentially identical to the *Churchill* and Rule 23 factors that the court examined above. Since the court has already found that these factors weigh in favor of approving the Agreement as a whole, they also support the reasonableness of the FLSA settlement in particular.

### D. Northern District Guidelines

The Northern District of California has issued procedural guidance for the settlement of class actions ("Guidelines"). The court will consider them, although they do not carry the weight of law.

#### 1. Identity of Settlement Class

The Guidelines require the parties to state "any differences between the settlement class and the class proposed in the operative complaint and an explanation as to why the differences are appropriate in the instant case." Guideline § 1(a).

The SAC defines the Rule 23 Class as:

> All hourly employees of CAPITAL BUILDING MAINTENANCE & CLEANING SERVICES, INC. who worked for Defendant in California within four years of the filing of the original complaint in this action through the date of the action's final disposition who were members of an affiliate of the Northern California District Council of Laborers and who received two wage statements one of which did not properly list the union designated regular rate of pay.

SAC ¶ 27. The FLSA collective class is defined as:

> All hourly employees of CAPITAL BUILDING MAINTENANCE & CLEANING SERVICES, INC. who worked more than 40 hours in a given workweek for Defendant and were employed within four years of the filing of the original complaint in this action through the date of the action's final disposition and who were members of an affiliate of the Northern California District Council of Laborers and who received two wage statements one of which did not properly list the union designated regular rate of pay.

*Id.*  The Rule 23 Class and FLSA Collective are defined almost identically in the revised Agreement, with minor, non-substantive changes.  *See* Agreement §§ 4, 5.

Since the settlement Class/Collective is substantially identical to those proposed in the operative complaint, this Guideline is satisfied.

### 2.   Release of Claims

The Guidelines require the court to look at "any differences between the claims to be released and the claims certified for class treatment and an explanation as to why the differences are appropriate in the instant case."  Guideline § 1(d).  Under the Agreement, Class and Collective Members release:

> any and all claims for relief, whether suspected or unsuspected, which the Settlement Class Members have had, now have, or may have in the future against the Released Parties or any of them for any acts that are either or both: (1) alleged in the Action or (2) arise out of the facts, matters, transactions or occurrences set forth in the Operative Complaint and could have been alleged as separate claims, causes of action, or other theories of relief. "Settled Claims" include, but are not limited to, claims for: (1) Failure to Pay Minimum Wage, Contractual Wages, and Overtime under the FLSA as to Collective Members who Opt-In and complete a timely their Consent to Join Collective Action; (2) Unpaid Minimum Wage, and Contractual Wages; (3) Waiting Time Pay; (4) Inaccurate Wage Statements; (4) Unfair Competition and (5) Civil Penalties under California's Private Attorney General's Act ("PAGA"). "Settled Claims" includes all types of relief that were or could have been made in the Action including, without limitation, any claims for damages, owed reimbursement, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, charge backs, or liquidated damages. The Final Judgment shall expressly provide that it covers and bars each and every Settlement Class Member from asserting any Settled Claims in the future.

Agreement § 33.  The release adequately distinguishes the release of FLSA claims from the other claims as it specifies that potential Collective Members only waive their FLSA claims if they timely complete and return a "Consent to Join Collective Action" form.  The release also relates only to the allegations in this case and the factual basis for those claims and is thus sufficiently tailored to the allegations in the SAC.

Thus, this factor weighs in favor of preliminary approval.

### 3. Class Recovery

The Guidelines require parties to explain "[t]he anticipated class recovery under the settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise." Guideline § 1(e).

The class recovery is examined in Section III.A.2, *supra*.

### 4. Allocation Plan

The parties should explain "the proposed allocation plan for the settlement fund." Guideline § 1(f). The allocation plan is detailed in Sections III.A.2 and III.B.3, *supra*.

### 5. Submission of Claim Forms

If there is a claim form, the parties should provide "an estimate of the number and/or percentage of class members who are expected to submit a claim in light of the experience of the selected claims administrator and/or counsel from other recent settlements of similar cases, the identity of the examples used for the estimate, and the reason for the selection of those examples." Guideline § 1(g).

This factor is considered in Sections III.A.2 and III.B.4, *supra*.

### 6. Reversions

"[I]n light of Ninth Circuit case law disfavoring reversions," the parties should state "whether and under what circumstances money originally designated for class recovery will revert to any defendant, the potential amount or range of amounts of any such reversion, and an explanation as to why a reversion is appropriate in the instant case." Guideline § 1(h).

As discussed in Section III.B.2, *supra*, no amount of the settlement fund will revert to Defendant.

### 7. Settlement Administration

"In the motion for preliminary approval, the parties should identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years. The parties should also address the anticipated administrative costs, the reasonableness of those

costs in relation to the value of the settlement, and who will pay the costs." Guideline § 2.

Here, the parties propose that the court appoint Phoenix Class Action Administration Solutions ("Phoenix") to serve as the Administrator. Mot. at 20-21. They agreed on using Phoenix after soliciting bids from three experienced and well-known class action settlement administrators. First Sutton Decl. ¶ 38. Plaintiff's counsel from Advocates have used Phoenix several times in the past without "serious" incident. *Id.* Phoenix's bid for the project totals $4,950.00. *Id.*, Ex. 3. Sutton explains that he estimates the costs will amount to $6,000 to account for "any unforeseen additional expenses which may be necessary and/or ordered by the Court." *Id.* ¶ 38. If the costs are less than anticipated, the difference will be distributed to the Class Members on a *pro rata* basis. *Id.*

As there are no concerns weighing against appointing Phoenix as the Class Administrator, this factor weighs in favor of preliminary approval.

### 8. Notice

"The parties should ensure that the class notice is easily understandable, taking into account any special concerns about the education level or language needs of the class members." Guideline § 3. The Guidelines list certain information that should appear in the notice, such as (1) contact information for class counsel; (2) website address for the settlement site; and (3) information on how to access the case docket on PACER. In addition, "[t]he notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2)." Guideline § 3.

The notice process is outlined in further detail above and is adequate for the reasons stated previously.

### 9. Opt-Outs

"The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out." Guideline § 4.

The Notice informs Class Members that they can exclude themselves from the Settlement by sending a letter by mail to the Administrator. First Sutton Decl., Ex. 2 at 5. Additionally, the opt-out form requests only enough information to identify the individual wishing to opt out of the Rule 23 Class. *See* Agreement, Ex. D.

Accordingly, the Agreement adequately informs Class Members of their right to exclude themselves from the settlement.

### 10. Objections

"The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections." Guideline § 5.

Here, the Notice instructs Class Members to send their objections only to the court, consistent with Guidelines § 5. *See* Agreement, Ex. A at 9. It also explains the process and consequences of objecting to the Agreement, including that the court cannot change the terms of the settlement. *See id.* at 2, 9.

The Notice therefore contains all the information identified in Guideline § 5.

### 11. Attorneys' Fees

The requested fee award is examined in Section III.B.3, *supra*.

### 12. Incentive Awards

After the class is notified and has the opportunity to object, Plaintiff intends to request, and Defendants will not oppose, an incentive award of $5,000 to Moreno, the class representative. Agreement § 14. "The request of $5,000 is reasonable as that amount is the presumptive incentive award in [the Northern District of California]." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019).

The incentive award requested is presumptively reasonable and there are no considerations

27

at this time that would warrant a lower award.

### 13. CAFA Notice

"The parties should address whether CAFA notice is required and, if so, when it will be given." Guidelines § 10.

Defendant represents that the required CAFA notice will be submitted no later than May 7, 2021. [Docket No. 35.] As laid out below, the court will hold a final approval hearing on September 9, 2021. Assuming that the CAFA notice will be served on May 7, 2021, there will be well more than 90 days between the submission of the notice and the issuance of a final approval order. *See* 28 U.S.C. § 1715(d) (requiring a 90-day period between submission of the CAFA notice and the final approval of a proposed settlement). The court will ensure that the 90-day period has passed at the final approval hearing.

### 14. Past Distributions

The Guidelines provide that "[l]ead class counsel should provide the following information for at least one of their past comparable class settlements (i.e. settlements involving the same or similar clients, claims, and/or issues)":

> a. The total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to each cy pres recipient, the administrative costs, and the attorneys' fees and costs.
>
> b. In addition to the above information, where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.

Guidelines § 11. "Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases." *Id.*

Sutton represents that, since Advocate's founding in October 2018, the firm has had only one class/representative action that received final approval. Second Sutton Decl. ¶ 3. In *Macias et al. v. QLM, Inc., et. al*, Alameda County Superior Court, Case No. RG19005507, a class of

construction workers represented by Advocates alleged violations of the Labor Code as well as PAGA claims. The court approved a total settlement fund of §1,150,000 for 94 class members. Notice was sent to all class members and 10 notice packets were deemed undeliverable after skip tracing methods were employed. The settlement agreement did not require any claim form; each class member with a valid address received their share of the settlement fund in the mail. The average gross recovery was at least $6,879.84 and potentially higher for some claimants since the amount of any uncashed checks were distributed to the rest of the class members *pro rata*. The court ultimately as awarded administration costs of $10,000; attorneys' fees of $383,295 (33.33% of the total settlement value); and litigation costs of $9,741.25.

Margain also submitted a comparator case for Justice at Work, *Palana et al. v. Mission Bay, Inc.*, No. 13-cv-5235-SI (N.D. Cal. 2013). Second Margain Decl. ¶¶ 4-11. In *Palana*, a court in this district approved a settlement of $450,000 split among 41 class members. *Id.* ¶ 7. Only one class member could not be found after diligent efforts and the settlement amount to which she was entitled was distributed *pro rata* to the other class members. *Palana*, Docket No. 172 at 4. In granting final approval, the court awarded $9,000 in administration costs; $150,000 in attorneys' fees (33.33% of the total settlement value); and $13,710.18 in costs. Second Margain Decl. ¶ 7-8.

These cases are helpful to show that Plaintiff's counsel have achieved significant relief on behalf of workers in other class action/representative cases. This factor weighs in favor of preliminary approval.

In sum, the court finds that preliminary approval is warranted in this case.

## IV.    CERTIFICATION OF THE RULE 23 CLASS

"The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial. On the other hand, in deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019). "[T]he aspects of Rule 23(a) and (b) that are important to certifying a settlement class are those designed

to protect absentees by blocking unwarranted or overbroad class definitions. The focus is on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 558.

### A. Rule 23(a)

Rule 23(a) provides that a class action is proper only if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4).

#### 1. Numerosity

Rule 23(a)(1) requires the class to be 'so numerous that joinder of all parties is impracticable.'" *Volkswagen*, 2017 WL 672820, at *6, 2017 U.S. Dist. LEXIS 22775, at *737 (quoting Rule 23(a)(1)). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc*., 190 F.R.D. 649, 654 (C.D. Cal 2000).

In this case, the Rule 23 Class contains only 25 members. While this number is borderline for certification, it is not clearly prohibited. Further, the parties have stipulated that the numerosity requirement is met for the purposes of class certification.

#### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Plaintiff asserts that "all Class and Collective Members were subjected to the same uniform compensation practice resulting in what Plaintiff alleges is a fundamental failure to pay for all hours worked at the lawful rate." Mot. at 17. He further asserts that there is common evidence in the form of payroll data, which establishes common question of fact. *Id.*

The court finds that the common questions of law and fact in this case support provisional class certification.

United States District Court
Northern District of California

### 3.     Typicality

Under Rule 23(a)(3), the claims of the representative parties must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Typicality 'assure[s] that the interest of the named representative aligns with the interests of the class.'" *Volkswagen*, 2017 WL 672820, at *7, 2017 U.S. Dist. LEXIS 22775, at *739.

Moreno alleges that he was "issued two checks during his employment, one using a nonunion rate as the regular rate of pay for overtime." Mot. at 17. This alleged injury is identical to the injuries alleged on behalf of the Class and Collective Members.

The court holds that the typicality requirement is satisfied for the purpose of provisional certification.

### 4.     Adequacy

Finally, Rule 23(a)(4) requires that the named plaintiffs, who seek to be class representatives, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts engage in a dual inquiry to determine adequate representation and ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Volkswagen*, 2017 WL 672820, at *7, 2017 U.S. Dist. LEXIS 22775, at *740-41.

This factor is addressed in Sections III.A.4 and III.B.1, *supra*, and is satisfied for the purposes of provisional approval.

### B.     Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiff must also meet one of the three requirements of Rule 23(b) to certify the proposed class. Plaintiff seeks certification of the class under Rule 23(b)(3), which states that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986)).

## 1. Predominance

Rule 23(b)(3) lists four non-exclusive factors "pertinent" to a predominance finding:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

The common questions in this case, as laid out in Section IV.A.2, *supra*, predominate over any individual issues that might exist. The claims raised in this case arise out of a single pattern of conduct: namely, that Defendants issued two different paychecks and wage statements for regular wages and overtime wages, and the overtime wages were improperly calculated based on a reduced regular rate.

For the purposes of provisional certification, the predominance factor is met.

## 2. Superiority

The superiority requirement focuses on "whether maintenance of [the] litigation as a class action is efficient and whether it is fair." *Volkswagen*, 2017 WL 672820, at *8. "[M]anageability of a class action for purposes of Rule 23(b)(3) is not an issue in the settlement context because the case will not be tried." 2019 WL 536661, at *7.

Here, the proposed class contains 25 individuals. Where each class member bringing an individual suit "would be required to prove the same wrongful conduct to establish liability and thus would offer the same evidence, . . . classwide resolution of their claims is clearly favored over other means of adjudication." *Volkswagen*, 2017 WL 672820, at *8.

The proposed class meets the superiority requirement. Accordingly, provisional certification of the class for settlement purposes is warranted in this case.

# V. CERTIFICATION OF THE FLSA CLASS

FLSA provides that employees may bring a collective action on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). "In contrast to class actions pursuant to

Rule 23 of the Federal Rules of Civil Procedure, potential participants in a collective action under the FLSA must 'opt in' to the suit by filing a written consent with the court in order to benefit from and be bound by a judgment." *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1028 (N.D. Cal. 2017) (citations omitted). "Employees who do not opt in are not bound by a judgment and may subsequently bring their own action." *Id.* "Because class members must opt-in, the standards for certifying a conditional FLSA class are considerably less stringent than those for Rule 23 classes." *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-03587 YGR, 2013 WL 100195, at *2 (N.D. Cal. Jan. 7, 2013).

"Determining whether a collective action is appropriate is within the discretion of the district court." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). In FLSA collective actions, a "specific, fact-intensive inquiry into whether plaintiffs are 'similarly situated' governs." *Brewer*, 2014 WL 5877695, at *14 (citations omitted). Plaintiffs bear the burden of showing that the plaintiffs are "similarly situated" for purposes of § 216(b). *Leuthold*, 224 F.R.D. at 466. "Courts have held that conditional certification requires only that plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Adams*, 242 F.R.D. at 536 (quotation omitted).

Here, Plaintiff alleges that Defendant failed to compensate him and the Class and Collective Members at an overtime rate calculated based on their regular rates of pay. This allegation is common to all Class and Collective Members.

Accordingly, the court finds that Plaintiff has satisfied his burden at the first stage to make "substantial allegations" that he and the putative class members "were subject to a single illegal policy." Conditional certification of the proposed FLSA class is thus appropriate.

## VI. CONCLUSION

For the reasons stated above, the motion for preliminary approval is granted. It is ordered that:

1. The Agreement is preliminarily approved as fair, adequate, and reasonable pursuant to Rule 23(e).

2.      The proposed Settlement Class is conditionally certified pursuant to Rule 23(a) and (b)(3) for the purposes of settlement.

3.      Plaintiff Moreno is appointed to serve as Class Representative for the Class.

4.      The law firms of Advocates for Workers Rights LLP and Justice at Work Law Group, LLP are appointed to serve as Class Counsel.

5.      Phoenix is appointed as the Claim Administrator.

6.      The proposed claim forms and forms of notice are approved as to form and content.  The parties shall have discretion to jointly make non-material minor revisions to the claim forms or the class notices. Responsibility regarding settlement administration, including, but not limited to, notice and related procedures, shall be performed by the Claim Administrator, subject to the oversight of the parties and this court as described in the Agreement.

7.      The procedures for Class Members to exclude themselves from or object to the Agreement are approved.  Any request for exclusion by a Class Member must be postmarked by **60 calendar days after the date of mailing of the Notice**, and in compliance with the terms of the Agreement. Any objection by a Class Member must be filed with the court by that same date, and in compliance with the terms of the Agreement.

8.      Class Counsel shall file a list of Class Members who have requested exclusion from the Settlement in a valid and timely manner by **7 days after the Notice Response deadline**.

9.      The parties shall file any memoranda or other materials in support of final approval of the Agreement, including in response to any timely and valid objection to the Agreement, no later than **14 days after Notice Response deadline.** Such materials shall be served on Class Counsel, Defendants' counsel, and on any member of the Class (or their counsel, if represented by counsel) to whose objection to the Agreement the memoranda or other materials respond.

10.     Plaintiff's claims against Defendants are hereby stayed.

11.     Pending final determination of whether the Settlement should be approved, Plaintiff and each Class and Collective Member, and any person purportedly acting on behalf of any Class Member or Collective Member(s), are hereby enjoined from commencing, pursuing, maintaining, enforcing, or proceeding, either directly or indirectly, any Released Claims in any judicial,

administrative, arbitral, or other forum, against any of the Released Parties, provided that this injunction shall not apply to the claims of Class members who have timely and validly requested to be excluded from the Class. This injunction will remain in force until the Effective Date or until such time as the parties notify the court that the Agreement has been terminated.

12.     In the event that the proposed Agreement is not finally approved by the court, or in the event that the Agreement becomes null and void or terminates pursuant to its terms, this order and all orders entered in connection herewith shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in this litigation or in any other case or controversy, in such event the Agreement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Agreement

13.     Counsel for the parties are hereby authorized to utilize all reasonable procedures in connection with the administration of the Agreement which are not materially inconsistent with either this order or the terms of the Agreement.

The following deadlines shall apply:

| | |
|---|---|
| Deadline for Defendant to provide class list to Settlement Administrator | **21 days after Preliminary Approval entered** |
| Initial date for Settlement Administrator to commence Notice program | **15 days after receiving class list** |
| Deadline for Class Members to Challenge Weeks Worked Information | **45 calendar days after Notice mailing date** |
| Deadline for Class Members to submit objections/requests for exclusion ("Notice Response deadline") | **60 days after Notice mailing date** |
| Deadline for Class Counsel to file a list of exclusions | **7 days after Notice Response deadline** |

| Deadline for Class Counsel to file motion for final approval | No more than 14 days after Notice Response deadline |
| Final approval hearing | September 9, 2021 at 1:00 p.m. |

The final approval hearing will take place via Zoom videoconference. In the Class Notice and any other settlement documents reflecting the time and date of the final approval hearing, the parties shall list the following hearing information:

**Webinar Access**: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/dmr.

**General Order 58**. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.

**Zoom Guidance and Setup**: https://www.cand.uscourts.gov/zoom/.

**IT IS SO ORDERED.**

Dated: May 5, 2021



Donna M. Ryu
United States Magistrate Judge