**ADVOCATES FOR WORKER RIGHTS LLP**
MARCO A. PALAU (Bar No. 242340)
　marco@advocatesforworkers.com
JOSEPH D. SUTTON (Bar No. 269951)
　jds@advocatesforworkers.com
ERIC S. TRABUCCO (Bar No. 295473)
　est@advocatesforworkers.com
212 9th Street, Suite 314
Oakland, California 94607
Telephone: (510) 269-4200
Facsimile: (408) 657-4684

**JUSTICE AT WORK LAW GROUP, LLP**
Tomas E. Margain (Bar No. 193555)
1550 The Alameda, Suite 302
San Jose, California 95126
Telephone: (408) 317-1100
Facsimile: (408) 351-0105

Attorneys for Plaintiff
EFREN MORENO and the Proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—OAKLAND DIVISION

| | |
|---|---|
| EFREN MORENO, on behalf of himself and all other similarly situated individuals, and the State of California,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CAPITAL BUILDING MAINTENANCE & CLEANING SERVICES, INC.,<br><br>　　　　　Defendant. | Case No. 19-cv-07087-DMR<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE SETTLEMENT & PLAINTIFF'S SERVICE AWARD**<br><br>Date:　　September 9, 2021<br>Time:　　　　1:00 p.m.<br>Location: Oakland Courthouse<br>Courtroom 4 – 3rd Floor<br>1301 Clay Street<br>Oakland, CA 94612<br><br>Before Magistrate Judge Donna M. Ryu |

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 1

II. OVERVIEW OF THE SETTLEMENT .................................................................. 2

    A. Settlement Fund ........................................................................................... 2

    B. Rule 23 Class and FLSA Collective Definitions ........................................ 2

    C. Net Monetary Relief to the Class ................................................................ 2

    D. Settlement Administration ........................................................................... 3

    E. Class Notices ............................................................................................... 3

    F. Tax Consequences of Settlement Payment ................................................. 3

    G. Scope of Release and Final Judgment ........................................................ 4

    H. PAGA Penalties .......................................................................................... 4

III. RELEVANT BACKGROUND ............................................................................... 4

    A. The Court Preliminarily Approved the Settlement ..................................... 4

    B. The Distribution of the Notices was Successful and Complied with the Court's Order ............................................................................................... 4

    C. The Vast Majority of Class and Collective Members Reacted Positively to the Settlement ............................................................................................. 5

    D. Compliance with CAFA Notice .................................................................. 5

IV. ARGUMENT ........................................................................................................... 5

    A. Final Approval Should Be Granted as This Settlement Is Fair, Adequate, and Reasonable ............................................................................................ 5

        1. Strength of Plaintiff's Case and the Risks of Proceeding with Litigation Support Final Approval ............................................................................ 6

        2. The Likely Expense and Duration of Further Litigation Favors Final Approval ................................................................................................... 7

        3. The Excellent Results Obtained for the Settlement Class/Collective Members Weigh in Favor of Final Approval ........................................... 8

        4. The Settlement Is Informed by Sufficient Information and Discovery ... 10

        5. The Settlement Is Supported by Experienced Class Counsel and an Able Class Representative ....................................................................... 10

        6. The Overwhelmingly Positive Reaction from the Class/Collective Strongly Favor Approval ........................................................................ 11

B. The Class Representative's Requested Service Awards Is Reasonable and Appropriate ...................................................................................................11

    1. The Requested Service Award is Appropriate .....................................11

    2. Plaintiff's Declaration Confirms the Service He Provided to the Class Merits the Requested Service Awards ................................................12

C. Class Counsel's Requested Attorneys' Fees and Costs Awards Are Reasonable and Justified. ................................................................................13

V. CONCLUSION ......................................................................................................14

TABLE OF AUTHORITIES

Federal Cases

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ............................................................... 5

*Asare v. Change Grp. Of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 U.S. Dist. LEXIS 165935 (S.D.N.Y. Nov. 15, 2013) ............................................................................ 12

*Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 U.S. Dist. LEXIS 99966 (N.D. Cal. July 21, 2014) .................................................................. 9

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ......................... 12

*Cody v. Hillard*, 88 F. Supp. 2d 1049 (D.S.D. 2000) ....................................................... 11

*DeWitt v. Darlington Cnty., S.C.*, No. 4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624 (D.S.C. Dec. 6, 2013) ............................................................................... 12

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014) ............................... 12

*Espinosa v. Ahearn (In re Hyundai and Kia Fuel Econ. Litig.)*, 926 F.3d 539 (9th Cir. 2019) ....... 5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. 6

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 U.S. Dist. LEXIS 13797 (N.D. Cal. Feb. 6, 2012) ...................................................................................... 11

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) .................. 12

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ........... 11

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .................................... 10

*Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832 (9th Cir. 1976) .................... 11

*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..... 11

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. Of S.F.*, 688 F. 2d 615 (9th Cir. 1982) . 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................... 6

*Stovall-Gusman v. W. W. Granger, Inc.*, No. 13-cv-2540-HSG, 2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) ...................................................................... 9

*Viceral v. Mistra Grp., Inc.*, No. 15-cv-19 02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) ............................................................................... 9

## I. INTRODUCTION

Plaintiff Efren Moreno moves for final approval of a class, collective, and representative action settlement of claims under the FLSA, the California Labor Code, the California Unfair Competition Law ("UCL"), and the California Labor Code Private Attorney General Act ("PAGA") to resolve the claims of nineteen (19) opt-in FLSA Collective Members and twenty-five (25) Rule 23 Class Members against Defendant Capital Building Maintenance & Cleaning Services, Inc. ("CBM").

The Court granted preliminary approval of the proposed settlement on May 5, 2021. See Preliminary Approval Order ("Prelim. Appr. Order"), Dkt. # 36. Since that time, the Settlement Administrator has distributed notice to Class and Collective Members in compliance with the Court's preliminary approval order. The Settlement Class and Collective have responded very favorably to the proposed settlement: No Class or Collective Member has objected to the proposed settlement, and only one Class Member has requested to be excluded from the settlement. Further, seventy-six percent (76%) of the FLSA Collective Action Members have affirmatively consented to join the collective action.

This positive response is unsurprising given the substantial monetary relief provided by the Settlement. As discussed below, after deductions to the gross settlement amount of $325, 000 for administration costs, service awards, the Private Attorney General Act ("PAGA") payment, and requested attorneys' fees and costs, will result in an average pre-tax award of $7,569.10 for Class and Collective Members. See Decl. of Kevin Lee of Phoenix Settlement Administrators (Phoenix), ("Lee Decl.") ¶ 11, Dkt. # 37. When the benefits of a significant, timely, certain settlement payment are weighed against the risks of continued, protracted litigation, including potential defeat at class certification or on the merits, the fairness, adequacy, and reasonableness of the proposed settlement are apparent. For these reasons, and as outlined in Plaintiff's preliminary approval motion and the attorneys' fees motion filed herewith, Plaintiff respectfully requests the Court to grant final approval of the Settlement and award Plaintiff a service award in the amount of $5,000.

## II. OVERVIEW OF THE SETTLEMENT

### A. Settlement Fund

Defendant CBM agrees in the Settlement Agreement to pay $325,000, plus the employer share of payroll taxes, to settle this putative class, collective, and representative action. See Settlement Agreement ("SA") submitted as Ex. 1 to Declaration of Joseph D. Sutton in Support of Supplemental Preliminary Approval Briefing (Dkt. # 32-2) ("Sutton Supp. Prelim. Appr. Decl.") § 56.

### B. Rule 23 Class and FLSA Collective Definitions

Class Members include all hourly employees of CBM who worked for Defendant in California at some point between October 28, 2015 and the date of preliminary approval (May 5, 2021) who were members of an affiliate of the Northern California District Council of Laborers and who received two wage statements one of which did not properly list the union designated regular rate of pay. SA §§ 4, 10, Dkt. # 32-2. FLSA Collective Action Members include all hourly employees of CBM who worked more than 40 hours in a given workweek for Defendant and were employed between October 28, 2016 and the date of preliminary approval (May 5, 2021) and who were members of an affiliate of the Northern California District Council of Laborers and who received two wage statements one of which did not properly list the union designated regular rate of pay, and who submitted a timely consent to join the collective action. *Id*. at §§ 5, 11. There are twenty-five (25) Rule 23 Class Members and nineteen (19) FLSA Collective Action Members. Lee Decl. ¶¶ 5, 10, Dkt. # 37.

### C. Net Monetary Relief to the Class

The Net Settlement Amount (the maximum Settlement fund minus costs of settlement administration ($4,950), PAGA payment to the California Labor and Workforce Development Agency ($7,500), a service award for Plaintiff ($5,000), and requested attorneys' fees ($108,322.50) and costs (up to $10,000)) of $189,277.50 will be distributed fairly among the settlement classes. $45,657.63 of the Net Settlement will be allocated to Collective Members

Claims based on the calculations of Class Counsel. Sutton Decl. ¶ 6. Any Collective Member who does not opt-in will have their shares redistributed pro-rata to the Collective Member shares who affirmatively opt in. SA at § 60, Dkt. # 32-2. The remaining $143,619.87 of the Net Settlement shall be allocated to the Rule 23 Class Members on a *pro rata* basis with the first $18,000 being distributed in equal shares to Rule 23 Class Members who are former workers of CBM. SA §§ 58, 59, Dkt. # 32-2.

### D. Settlement Administration

The Parties selected and the Court approved Phoenix to act as the Settlement Administrator. See Prelim. Appr. Order § 5, ¶ 5, Dkt. # 36. The Settlement Administrator's duties included distributing the Settlement Notices, being available to receive objections and exclusion forms, calculating individual Settlement payments, and answering queries of the Class and Collective Members. If final approval is granted, Phoenix will be responsible for disbursing the applicable amounts to the settling employees. The Settlement Administrator will be paid $4,950 for all costs of administration, which is less than the $6,000 preliminarily approved by the Court. See Dkt. # 36, pp. 26; Lee Decl. at ¶ 12, Dkt. # 37. The excess amount will be distributed to Class Members. Sutton Prelim. Decl. ¶ 38, Dkt. # 29-2.

### E. Class Notices

The notices attached as Exhibits A and B to the Lee Decl. (Dkt. # 37) explained the terms of the Settlement, how to object to or opt out of the Settlement for California Class Members, and how to request changes to the number of workweeks used to calculate each individual's recovery. On June 10, 2021, Phoenix sent notices out based on the initial mailing list provided by Defendant. Lee Decl. at ¶ 5, Dkt. # 37. Class Members had 60 days after the initial mailing of the Notice to submit an objection or request for exclusion from the Settlement. *Id.* at ¶¶ 5, 8. No class member objected to the terms of the settlement and only one Class Member sought exclusion. *Id.* at ¶¶ 6, 7. No challenges from Class or Collective members regarding their respective number of workweeks worked were received. *Id.* at ¶ 9.

### F. Tax Consequences of Settlement Payment

Individual settlement payments shall be characterized as 20 percent wages, 60 percent

penalties, and 20 percent interest. SA § 67, Dkt. 32-2. Wage payments shall be subject to all required withholdings. *Id*. Each putative class member's gross settlement award will be reported on a W-2 and/or 1099 Form. *Id*.

### G. Scope of Release and Final Judgment

When the judgment becomes final, the Plaintiff and participating Class and Collective Members will release all wage and hour claims through the settlement date that relate to the claims asserted in the lawsuit or that could have been asserted based upon the facts alleged in the operative complaint. SA § 36, Dkt. 32-2.

### H. PAGA Penalties

In light of the claims alleged and their estimated value, the Parties agreed to pay $7,500 to the Labor and Workforce Development Agency for all applicable PAGA penalties. SA § 29, Dkt. 32-2. The LWDA was notified of the settlement and did not respond. Sutton Decl. ¶ 7.

## III. RELEVANT BACKGROUND

### A. The Court Preliminarily Approved the Settlement

In its May 5, 2021 Order granting preliminary approval, the Court, among other things: (1) approved distribution of class notices; (2) set a 60-day period for Class Members to opt out or object to the settlement and 60-days for FLSA Collective Members to opt-in; (3) set a deadline for the filing of Plaintiff's Motion for Final Approval; and (4) scheduled the final approval hearing for September 9, 2020. Prelim. Appr. Order at Dkt. # 36.

### B. The Distribution of the Notices was Successful and Complied with the Court's Order

On May 21, 2021, Phoenix received a data file from Defense Counsel that contained names, last known mailing addresses, Social Security numbers, and dates of employment for each Class Member during the Class Period. The final mailing list contained twenty-five (25) Class Members. Lee Decl. ¶ 3, Dkt. # 37. On June 10, 2021, Phoenix conducted a National Change of Address (NCOA) search in an attempt to update the class list of addresses as accurately as possible. *Id*. at ¶ 4. A search of this database provides updated addresses for any individual who

has moved in the previous four (4) years and notified the U.S. Postal Service of their change of address. *Id*. On June 10, 2021, Phoenix mailed the Notice Packet via U.S. first class mail, in English and Spanish, to all twenty-five (25) Class and Collective Members on the Class List. *Id*. at ¶ 5. No Notice Packets have been returned to Phoenix as undeliverable. *Id*.

### C. **The Vast Majority of Class and Collective Members Reacted Positively to the Settlement**

Phoenix has received only one (1) Request for Exclusion (i.e. "Opt-Out"). Lee Decl. at ¶ 7, Dkt. #37. The deadline for Class Members to submit an Opt-Out was July 26, 2021. *Id*. The only Opt-Out submitted was from Class Member Maria E. Campos. Ex. B to Lee Decl., Dkt. # 37. Phoenix has received zero (0) Objections to the Settlement. *Id*. at ¶ 8. The deadline for Class Members to submit an "Objection" to the Settlement was July 26, 2021. *Id*. No challenges from Class or Collective members regarding their respective number of workweeks worked were received. *Id*. at ¶ 9.

### D. **Compliance with CAFA Notice**

The Parties, through Defense counsel, provided notice as required by the Class Action Fairness Act, 28 U.S.C. §§ 1715(b), (d) on February 27, 2020. Sutton Decl. ¶ 8.

## IV. ARGUMENT

### A. **Final Approval Should Be Granted as This Settlement Is Fair, Adequate, and Reasonable**

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Espinosa v. Ahearn* (*In re Hyundai and Kia Fuel Econ. Litig.*), 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. Of S.F.*, 688 F. 2d 615, 625 (9th Cir. 1982).

To approve a proposed settlement of a class action under Federal Rule 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Although Rule 23 provides no precise formula for making this determination, the Ninth Circuit has identified several factors to be considered: (1) the strength of the case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the size of the claims and amount offered to settle them; (4) the stage of the proceedings, i.e., whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; and (6) the reaction of the class to the proposed settlement. *See Staton,* 327 F.3d at 959; See also *Officers for Justice*, 688 F.2d at 625. Here, all of the relevant factors weigh in favor of final approval.

        1.        <u>Strength of Plaintiff's Case and the Risks of Proceeding with Litigation Support Final Approval</u>

The Court should reaffirm that this Settlement is fair because the value of the settlement is significant given the litigation risks and uncertainties. Plaintiff alleges that he and Class and Collective Members had their wages divided into two paychecks for the same week—one check and wage statement listed regular hours worked at the then Union rate of pay for final cleanup labor and a second check and wage statement which listed overtime hours and a different rate of pay than in the first check. Stemming from this, Plaintiff alleges the following FLSA and California Labor Code violations: (1) failure to pay lawful minimum and overtime rates to workers pursuant to the Fair Labor Standards Act ("FLSA") 29 USC sections 207, 216(b), and 255(a); (2) failure to pay minimum wage, in violation of Wage Order Orders and Labor Code sections 1194, 1194.2, and 1197; (3) failure to pay wage rate designated by Statute or contract in violation of Labor Code § 223; (4) failure to timely pay all wages due upon termination, in

violation of Labor Code sections 201 & 202; (5) failure to provide accurate itemized wage statements, in violation of the Wage Orders and Labor Code section 226; (6) violation of the California Unfair Competition Law (Bus. & Prof. Code section 17200, et seq.); (7) declaratory relief; and (8) civil penalties pursuant to PAGA. See Dkt. # 22. Plaintiff maintains that he and the Class/Collective would likely prevail at trial because Plaintiff believe the case has significant strengths, namely that the underlying overtime claims can be shown through Defendant's payroll data.

On the other hand, Plaintiff recognizes that he faces significant risks with continued litigation. The compromise figure proposed by the Settlement also takes into account that Defendant vigorously contests liability in this action as to the Rule 23 claims, primarily the California Labor Code sections 221 and 223 claims that they were secretly paying a lower wage, are represented by talented counsel, and are prepared to vigorously defend against these claims if the action is not settled. While Plaintiff and their counsel firmly believe that the Rule 23 claims would be granted class certification, there was a viable preemption argument that the claims should have been pursued through arbitration and numerosity challenges. See Sutton Prelim. Appr. Decl. ¶ 33, Dkt. # 29-2.

### 2. The Likely Expense and Duration of Further Litigation Favors Final Approval

Without this early settlement Plaintiff would spend time and resources opposing CBM's likely motion to compel individual arbitration, responding to discovery, being deposed, giving a declaration, assisting his attorneys with motion practice, and ultimately appearing at trial. Even if Plaintiff was to prevail, he would be required to expend significant additional time and resources, potentially outweighing any additional recovery obtained through successful litigation. Sutton Prelim. Appr. Decl. ¶ 34, Dkt. # 29-2. In any case, when the financial benefit of a $325,000 Class/Collective settlement is weighed against further litigation and the likelihood of appeals on complex and some less than certain claims, Plaintiff's counsel believes the Settlement with Defendants for the consideration stated, and on the terms set forth in the Settlement, is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known

facts and circumstances. *Id*.

### 3. The Excellent Results Obtained for the Settlement Class/Collective Members Weigh in Favor of Final Approval

The proposed Settlement's monetary relief is well within the range of possible approval based on recovery as a percent of maximum exposure. Sutton Prelim. Appr. Decl. ¶ 34, Dkt. # 29-2. Here, the Settlement provides the Class and Collective Members with immediate and significant settlement payments. The median payment for Class/Collective Members will be $7,569.10. Lee Decl. ¶ 11, Dkt. #37. These amounts represent a fair and reasonable settlement result. See Sutton Decl. ¶ 3; Moreno Decl. ¶ 12. Defendant will pay separately its share of employer payroll taxes - a further financial benefit to the Class. See SA § 56, Dkt. # 32-2.

The monetary relief Class and Collective Members provides good value when contrasted to the maximum estimated damages of $847,902.65. See Supp. Prelim. Brief, Dkt. # 32. As detailed in Plaintiffs' preliminary approval papers, this case revolves around the employer's practice of paying workers a union rate and a non-union rate and providing workers two separate pay checks and wage statements, one for the union rate and one for the non-union rate. The clearest violation arising from this practice is the employer's failure to properly compute the regular rate of pay for overtime work (FLSA claim). Plaintiff's counsel calculated that the total overtime owed to workers over the last four years is $45,657.63. Supp. Prelim. Brief, Dkt. # 32, pp. 3. The Settlement allocates this entire amount to members of the FLSA Collective, which consists of workers who affirmatively consent to join the lawsuit. *Id*. This is a robust recovery for this claim, even though it does not include liquidated damages because: (a) establishing liability for liquidated damages is not guaranteed; (b) it is also not guaranteed that all workers will choose to opt in to the FLSA claim since the vast majority— approximately 20 workers—are current employees who may be reticent to submit a consent to join a lawsuit against their current employer; (c) shares allocated to workers who decide to not become members of the FLSA Collective will be redistributed to those who do become members; and (d) the FLSA amount is calculated over a 4-year liability period and the issue of whether the UCL extends the FLSA recovery period could be litigated and appealed. *Id*.

The Rule 23 Class is driven by the Labor Code section 223 claim with an estimated value of $303,433.93. Supp. Prelim. Brief, Dkt. # 32, pp. 5. The derivative claims have an estimated value of $57,000 (section 226) and $35,953.50 (section 203) respectively. Sutton Prelim. Appr. Decl. ¶ 31, Dkt. # 29-2. Plaintiff's section 223 claim is based the allegation is that workers were paid the non-union rate for work that required a union rate, and the estimated damages of $303,433.93 assumes that every single wage statement for the statutory period with a non-union rate is incorrect. *Id*. However, this damage estimate was made for purposes of mediation in an attempt to determine the upper limit of wage liability for the claim, because the evidence did not permit Plaintiff to perform a full audit like the one performed for overtime to calculate a more precise estimate of damages. *Id*.

The section 223 claim raises contested legal questions which would require substantial litigation and adjudication by the Court, such as what is and what is not "covered work" under Defendant's collective bargaining agreement, and it is not at all clear that Plaintiff would prevail or that the claim would escape preemption. Further, the claim is very fact intensive and presents challenges in terms of the evidence available to determine precisely the work performed by Class Members. Therefore, the $136,019.00 to be divided amongst the Rule 23 Class, which represents 34% of the total estimated damages, is an excellent result for the Rule 23 Class given the difficulties that could be encountered in further litigation.

As a whole, including the estimated PAGA penalties ($369,483.30), the gross settlement of $325,000 represents 38% of the total estimated damages, which is within the range of reasonableness. See *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 U.S. Dist. LEXIS 99966, at *16-17 (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial); *Stovall-Gusman v. W. W. Granger, Inc.*, No. 13-cv-2540-HSG, 2015 U.S. Dist. LEXIS 78671, at *12-13 (N.D. Cal. June 17, 2015) (approving settlement where net amount represented 7.3 percent of plaintiffs' estimated trial award); *Viceral v. Mistra Grp., Inc.*, No. 15-cv-19 02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *21, 23-24 (N.D. Cal. Oct. 11, 2016) (approving gross settlement fund that represented 11.6% of the total verdict value for the California class when risk on the

merits and on certifiability of a class action was such that "a deeply discounted recovery is better than the substantial likelihood of recovering nothing"). Indeed, given that the settlement provides for nearly 40% of the total estimated damages and the difficulty inherent in further litigating the section 223 claim, the result for the FLSA Collective and the Rule 23 Class is excellent.

    4. <u>The Settlement Is Informed by Sufficient Information and Discovery</u>

As set forth in the preliminary approval motion, prior to the parties mediation, Defendant produced a sampling of timekeeping and payroll documents for the approximately 100 members of the Rule 23 class (prior to the parties agreement to narrow the Rule 23 class to twenty-vie (25) workers) and payroll summaries/reports for all twenty-vie (25) members of the FLSA collective that allowed Plaintiff to accurately project the FLSA overtime damages of those workers who had received two paychecks with unlawful overtime calculations Prelim. Sutton Prelim. Appr. Decl. ¶¶ 16, 17, Dkt. # 29-2. Courts look to the amount of exchanged information prior to the settlement to determine whether the parties made an informed decision to settle. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, the Parties were well-informed about the relative strengths of their positions and were well-prepared to reach this Settlement.

    5. <u>The Settlement Is Supported by Experienced Class Counsel and an Able Class Representative</u>

The settlement class members have been represented by attorneys who are very experienced in the areas of law at issue here. See Sutton Decl. ISO Prelim. App. ¶¶ 3-6, Dkt. # 29-2; Declaration of Tomas Magain ("Margain Decl.") at ¶¶ 3-17 filed herewith. As set forth more fully in documents submitted with Preliminary Approval and the Fee Motion, Class Counsel have substantial experience in litigating class and representative actions. *Id*. Class Counsel strongly support approval of this Settlement, and such support should be accorded significant consideration. See Sutton Decl. ¶ 3. "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation' [and] [t]hus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment

for that of counsel.'" *Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citations omitted).

The Plaintiff has ably represented the Class, has been engaged in the litigation, has no conflicts with class, and advocated for the Class at mediation; based upon his knowledge of the facts and his experience in helping to litigate the case, he believes that the Settlement is fair result for the FLSA collective and the Rule 23 class. See Moreno Decl. ¶¶ 5-12.

### 6. The Overwhelmingly Positive Reaction from the Class/Collective Strongly Favor Approval

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a factor of great significance. See *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). A relatively low percentage of objectors or opt outs is a very strong sign of fairness that weighs heavily in favor of approval. See *Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) (approving the relevant settlement in large part because only 3% of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement).

As discussed above, after receiving notice of the settlement, not one Class or Collective Member objected to the Settlement, and only one Class Member has chosen to opt-out. Lee Decl. ¶¶ 7, 8, Dkt. # 37. This overwhelming support for the Settlement from Class and Collective Members favors final approval.

**B.  The Class Representative's Requested Service Awards Is Reasonable and Appropriate**

### 1. The Requested Service Award is Appropriate

The proposed service award of $5,000 to Plaintiff is consistent with this District's approved settlements. See *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 U.S. Dist. LEXIS 13797, at *21-24 (N.D. Cal. Feb. 6, 2012) (awarding service payment of $12,500 where the plaintiff spent approximately 100 hours prosecuting the case); *Dyer v. Wells Fargo Bank,*

*N.A.*, 303 F.R.D. 326, 335-36 (N.D. Cal. 2014) (approving $10,000 service award because the plaintiff expended a significant amount of time prosecuting the action despite not signing a general release or facing the risk of industry backlash); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (approving service award of $15,000 where plaintiff spent 73 hours assisting counsel and faced industry notoriety for bringing the lawsuit).

Service payments are especially warranted in employment actions, "where the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *DeWitt v. Darlington Cnty., S.C.*, No. 4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624, at *38 (D.S.C. Dec. 6, 2013) (internal quotation and citations omitted); see also, e.g., *Asare v. Change Grp. Of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 U.S. Dist. LEXIS 165935, at *40 (S.D.N.Y. Nov. 15, 2013) (plaintiffs "faced the risk that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process.").

Here, Plaintiff seeks a $5,000 service award in compensation for the critical role he played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the settlement classes. "The request of $5,000 is reasonable as that amount is the presumptive incentive award in [the Northern District of California]." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019). Thus, the $5,000 requested service award is presumptively reasonable.

2. <u>Plaintiff's Declaration Confirms the Service He Provided to the Class Merits the Requested Service Awards</u>

The proposed service award of $5,000 to Plaintiff is warranted for the critical role he played in stepping forward to bring this case, the time and effort he expended to help secure the positive collective outcome on the case, the general release he has agreed to, and the risks he assumed in the lawsuit. Plaintiff has dedicated many hours to this lawsuit including: frequent

phone conversation with his attorneys to share his work experience, stay updated on the case, discuss outreach to other workers; searching for and reviewing his wage statements with counsel; responding to request for information related to his work experience; participating in the mediation; and discussing the proposed settlement before and after preliminary approval with fellow Class and Collective Members. Moreno Decl. ¶ 10. Plaintiff has also signed a complete and general release of all Claims in exchange for the service award. SA § 55, Dkt. # 32-2. Further, the requested $5,000 award is not disproportionate to the range of recovery because Class/Collective Members will receive gross awards averaging $7,569.10. See Lee Decl. ¶11, Dkt. #37.The Class Notices included the proposed service award to Plaintiff. *Id.*, Ex. A. No class member has complained of the proposed service award. Undersigned counsel believes the requested amounts are the minimum that would viably promote the public policy interest in encouraging those with wage claims to assert them despite the fears associated with doing so. Sutton Decl. ¶ 10.

### C. Class Counsel's Requested Attorneys' Fees and Costs Awards Are Reasonable and Justified.

Plaintiff's fee request is briefed in the Fee Motion notice to be heard herewith. Plaintiff requests an attorneys' fees award of $108,322.50, which is one-third of the original Settlement Amount. No objections to the fee request have been made to date. Lee Decl. ¶ 8, Dkt. # 37. The lack of objections also confirms that the outstanding result obtained for the Class and Collective by Class Counsel justifies the requested fee award.

Class Counsel will continue to spend time securing final approval, updating the Class concerning the results of the final approval hearing, assuring payout to settlement class members, and responding to questions and concerns of settlement class members and the Settlement Administrator during the distribution process. Class Counsel's current lodestar is $340,090, which exceeds the requested one third of the gross settlement attorneys' fee award ($108,322.50) by $231,767.50. Sutton Fees Decl. at ¶ 13 filed herewith. For the reasons set forth in the Fee Motion, Plaintiffs' request for a fee equal to one-third of the common fund is reasonable and should also be approved.

Plaintiff also requests reimbursement of litigation costs incurred in the amount up to $10,000. For the reasons set forth in Plaintiff's Fee Motion, these costs are justified. The requested costs ($7,687.04 ) are less than the $10,000 maximum stated in the Class Notice, to which no Class Member objected. See Lee Decl. ¶ 8, Dkt. # 37. The excess costs will be distributed to class and collective action members.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the Settlement reached in this matter in the gross amount of $325,000 (plus Defendant's share of payroll taxes), grant Plaintiff a service awards totaling $5,000, approve the requested attorneys' fees and costs awards for the reasons described in the accompanying Fee Motion, and enter the judgment accordingly. A Proposed Order is submitted herewith.

Dated: August 23, 2021         **ADVOCATES FOR WORKER RIGHTS LLP**

                                           */s/ Joseph D. Sutton*
                                           Joseph D. Sutton
                                           Attorneys for Plaintiffs