UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFREN MORENO,<br><br>   Plaintiff,<br><br>  v.<br><br>CAPITAL BUILDING MAINTENANCE & CLEANING SERVICES, INC.,<br><br>   Defendant. | Case No. 19-cv-07087-DMR<br><br>**ORDER ON MOTION FOR FINAL APPROVAL OF A CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 38, 39 |

On October 28, 2019, Plaintiff Efren Moreno filed a class and collective action complaint against Defendant Capital Building Maintenance & Cleaning Services, Inc, alleging violations of the Fair Labor Standards Act ("FLSA"), the California Labor Code ("Labor Code"), and the California Unfair Competition Law ("UCL"). [Docket No. 1.] Plaintiff filed a first amended complaint and a second amended complaint on December 27, 2019 and September 22, 2020, respectively. [Docket Nos. 9, 22 ("SAC").] On December 4, 2020, Plaintiff filed a motion for preliminary approval of a class action settlement, which the court granted on May 5, 2021. [Docket Nos. 29 ("Prelim. Mot."), 36 ("Order on Prelim. Mot.").] The parties now seek final approval of the settlement. [Docket No. 38 ("Final Mot.").] Plaintiff also moves for an award of attorneys' fees. [Docket No. 39 ("Fees Mot.").] The court held a hearing on September 9, 2021.

For the reasons stated below, the motions are granted.

**I. BACKGROUND**

Defendant is a California corporation that provides various labor services throughout Northern California, including window washing, construction cleanup, floor maintenance, pressure washing, trash removal, and graffiti removal, among others. SAC ¶¶ 4, 14, 17. Defendant's janitorial work is largely performed in tenant-occupied buildings while its construction cleanup

work is done on construction sites, usually in buildings that are not currently tenant-occupied. *Id.* ¶ 17. Plaintiff is a former unionized employee of Defendant. *Id.* ¶ 5. He and Defendant's other employees received an hourly wage rate negotiated by their representatives in the Northern District Council of Laborers. *Id.* ¶ 18.

Plaintiff alleges that Defendant improperly calculated his overtime wages based on a reduced regular rate rather than the actual regular rate set by his union contract. SAC ¶¶ 18-22. For example, Plaintiff's regular rate of pay in 2016 was $22.73 per hour but his overtime rate was only $27.00 per hour. *Id.* ¶ 22. Because overtime is paid at 1.5x the regular rate of pay, Plaintiff's overtime rate was essentially calculated based on a rate of $18.00 per hour rather than his actual rate of $22.73 per hour. *See id.* Plaintiff would usually receive one check and wage statement for his regular hours and a separate check and wage statement for his overtime hours. *Id.* The wage statement for his overtime hours did not list his regular rate of pay. *Id.* ¶¶ 22, 25. Plaintiff also alleges that Defendant's pay system does not properly record all hours worked. SAC ¶ 24. Specifically, the system rounds time into half hour intervals rather than reflecting the actual amount of time worked. *Id.* As a result, workers are not paid for all the hours they work. *Id.*

The SAC proposes a Rule 23 class of employees defined as:

> All hourly employees of CAPITAL BUILDING MAINTENANCE & CLEANING SERVICES, INC. who worked for Defendant in California within four years of the filing of the original complaint in this action through the date of the action's final disposition who were members of an affiliate of the Northern California District Council of Laborers and who received two wage statements one of which did not properly list the union designated regular rate of pay.

SAC ¶ 26 ("Class Members"). Plaintiff also seeks to represent a FLSA collective composed of:

> All hourly employees of CAPITAL BUILDING MAINTENANCE & CLEANING SERVICES, INC. who worked more than 40 hours in a given workweek for Defendant and were employed within four years of the filing of the original complaint in this action through the date of the action's final disposition and who were members of an affiliate of the Northern California District Council of Laborers and who received two wage statements one of which did not properly list the union designated regular rate of pay.

SAC ¶ 27 ("Collective Members"). At the hearing, Plaintiff explained that both the Class and the Collective are comprised of the same 25 individuals.

Plaintiff brings claims for (1) failure to pay minimum wage and overtime in violation of FLSA, 29 U.S.C. §§ 207, 216(b), and 255(a); (2) failure to pay minimum wage and failure to pay for all hours worked in violation of Labor Code §§ 1194, 1194.2, 1197 and the Industrial Welfare Commission ("IWC") Wage Orders; (3) failure to pay the wage rate designated by statute or contract in violation of Labor Code § 223; (4) waiting time penalties pursuant to Labor Code § 203; (5) failure to provide accurate wage statements in violation of Labor Code § 226; (6) violation of the UCL, California Business & Professions Code §§ 17200 *et seq.*; (7) declaratory relief; and (8) civil penalties under California's Private Attorneys General Act ("PAGA"), Labor Code §§ 2699 *et seq.*

After conducting discovery, the parties reached a settlement on July 30, 2020 through mediation before Jeffrey Ross. No motions for summary judgment or class certification were filed. On January 28, 2021, the court held a hearing on Plaintiff's motion for preliminary approval of the class action settlement. Following the hearing, the court ordered Plaintiff to submit additional information about the proposed settlement. [Docket No. 31.] Plaintiff filed supplemental briefing on February 18, 2021. [Docket No. 32, Supplemental Brief in Support of Preliminary Approval ("Supp. Br.").] The court granted the motion for preliminary approval on May 5, 2021.

The terms of the settlement agreement ("Agreement")[1], and the court's preliminary evaluation of those terms, are set forth in detail in the order granting the motion for preliminary approval of the class settlement and are therefore not repeated here. Plaintiff filed a motion for final approval on August 23, 2021, along with supporting documentation. [Docket No. 38.]

## II.   CAFA NOTICE

This action is subject to the requirements of the Class Action Fairness Act ("CAFA") which requires, that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate state and federal officials. 28 U.S.C. § 1715(b). CAFA also prohibits a court from granting final approval until ninety days have elapsed since notice was served under § 1715(b). *Id.* § 1715(d).

Defendant served the requisite CAFA notice on May 6, 2021. [Docket No. 41].

---

[1] All references to the Agreement throughout this order refer to the amended Agreement attached as Exhibit 1 to Docket No. 32-1, Second Declaration of Joseph D. Sutton ("Second Sutton Decl.").

3

Accordingly, the CAFA notice requirement has been satisfied.

### III. MOTION FOR FINAL APPROVAL

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). The settlement of a certified class action must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The court's role in reviewing a proposed settlement is to represent those class members who were not parties to the settlement negotiations and agreement." *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016).

In granting the motion for preliminary approval, the court thoroughly examined the fairness of the settlement under the factors set forth in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), the Rule 23(e)(2) factors, the Northern District of California's Procedural Guidance for Class Action Settlements,[2] and the FLSA fairness factors. The court also found it proper to conditionally certify the proposed Rule 23 Class and the FLSA Collective. There were no objections from Class or Collective Members as to any aspect of the proposed settlement. Accordingly, the court does not find a reason to revisit its prior findings and addresses only the matters that could not be finally resolved at preliminary approval: (1) whether notice to the class was effective; (2) whether the class member response was favorable; and (3) whether the requested attorneys' fees and costs are reasonable.

#### A. Adequacy of Notice

Rule 23 requires the court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tadepalli*, 2016 WL

---

[2] Available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

4

1622881, at *6 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The Agreement provided for notice to Class and Collective Members via first class mail at their last known address. Agreement § 68(c)(i). The notice program included methods for trying alternate means of contacting class members if an email or mail is returned as undeliverable. For example, if a mailing was returned due to an incorrect address but contains a forwarding address, then the claims administrator would re-mail the notice packet to the forwarding address. *Id.* § 68(c)(iii). If a Class Notice is returned without a forwarding address, the Administrator would search for a current address using effective skip trace methods. *Id.* If a current address was found, the administrator would re-mail the Class Notice.[3] *Id.* The court previously approved this notice process and appointed Phoenix Class Action Administrative Solutions ("Phoenix") to serve as the Claims Administrator. Order on Prelim. Mot. at 19-20, 34.

Kevin Lee, a case manager at Phoenix who oversaw the notice program in this case, submitted a declaration outlining the effectiveness of the notice program. [Docket No. 37, Declaration of Kevin Lee ("Lee Decl.").] He testifies that Phoenix conducted a National Change of Address ("NCOA") search on all class members in order to obtain the most up-to-date information on each individual. Phoenix mailed the Notice packet to all Class and Collective Members on June 10, 2021. *Id.* ¶ 5. As of August 18, 2021, no Notice packets were returned as undeliverable. *Id.* ¶ 6. Further, putative FLSA Collective members were required to affirmatively opt-in to the Collective Action. Lee represents that 19 of the 25 Collective Members submitted a Consent to Join Collective Action form, which constitutes 76% of the potential Collective Members.

Given that no Notice packets were returned as undeliverable, the parties' representations that they had recent contact information for all Class and Collective Members, the NCOA search performed by Phoenix to update the contact information, and the opt-in response from 76% of putative Collective Members, the court finds that the notice distribution plan was the "best notice that is practicable under the circumstances," consistent with Rule 23(c)(2).

---

[3] In the hearing on the motion for preliminary approval, the parties represented that there are no anticipated difficulties in contacting the 25 Class and Collective Members, since the union has their recent contact information.

### B. Class Member Response

In response to the notice program, Phoenix received only one request for exclusion. Lee Decl. ¶ 7; *id.*, Ex. B, Request for Exclusion by Maria E. Campos. Neither Phoenix nor the court received any objections to the settlement. *See* Lee Decl. ¶ 8. The deadline for Class Members to object to the settlement was July 26, 2021. "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2020 WL 1531331, at *11 (N.D. Cal. Mar. 31, 2020) (citation omitted); *Churchill Vill., L.L.C.*, 361 F.3d at 577. Therefore, the absence of any objections and only 1 opt-out request weighs strongly in favor of granting final approval.

Considering the above factors and the factors evaluated in the order granting preliminary approval, the court finds that the Agreement is fair, adequate, and reasonable, and that the Class and Collective Members received adequate notice. Accordingly, Plaintiff's motion for final approval of the class action settlement is granted.

### IV. MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

### A. Attorneys' Fees

Class counsel request, and Defendants do not oppose, attorneys' fees in the amount of $108,322.50, which represents one third of the gross settlement amount. Agreement § 56(a). "District courts must be skeptical of some settlement agreements put before them because they are presented with a bargain proffered for approval without benefit of an adversarial investigation." *Hanlon*, 150 F.3d at 1021 (internal quotations and citations omitted). "These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.* The Ninth Circuit has approved two different methods of calculating a reasonable attorneys' fees award. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). "Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement." *Brawner v. Bank of Am. N.A.*, No. 14-cv-2702-LB, 2016 WL 161295, at *4 (N.D. Cal. Jan. 14, 2016). Courts

may cross-check a percentage of recovery award against the lodestar to guard against an unreasonable result. *See Bluetooth*, 654 F.3d at 944.

### 1. Percentage of Recovery Method

The benchmark for a reasonable fee award is 25% of the total class recovery. *Bluetooth*, 654 F.3d at 942. However, courts may award more or less than the benchmark if there are "special circumstances" that justify such a departure. *Bluetooth*, 654 F.3d at 942. For example, courts may consider "exceptional results, the risk of non-recovery, any benefits beyond the cash settlement fund that counsel achieved for the class, counsel's reasonable expectations based on the circumstances of the case and the range of fee awards out of common funds of comparable size, and any unusual burdens borne by counsel." *Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 12932332, at *5 (N.D. Cal. Sept. 3, 2015) (cleaned up) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)). Here, class counsel is seeking an award of $108,322.50, which is approximately one third (33%) of the common fund. The court determines that the requested fees are warranted in this case for several reasons.

First, cases with a relatively small fund of under $10 million will "often result in fees above 25%." *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008); *Cicero v. DirecTV, Inc.*, No. 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("[A] review of California cases in other districts reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million."); *Alvarez v. Farmers Ins. Exch.*, No.14-cv-00574-WHO, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million." (citing cases)). The common fund in this case amounts to $325,000, which is well below $10 million. The relatively small common fund weighs in favor of an upward departure from the 25% benchmark.

Second, the court previously noted the "substantial risk to class and collective recovery if the case were to proceed further in litigation," in light of Defendant's various preemption and arbitration defenses. *See* Order on Prelim. Mot. at 9. Given the possibility of at least a reduced recovery, the risks present in this case weigh in favor of a higher fee award. *See Barnes v. The Equinox Grp., Inc.*, No. 10-cv-3586 LB, 2013 WL 3988804, at *4 (N.D. Cal. Aug. 2, 2013)

7

(awarding fees in the amount of 33% of the common fund where "[c]ounsel assumed substantial risk, litigated risk on a contingent basis, and are receiving fees that are fair considering those factors").

Third, as noted above, the Notice program in this case was successful. No Notice packets were returned as undeliverable. Of the 25 putative Collective Members, 19 (76%) affirmatively opted-in to the FLSA Collective. There is no indication that any Class or Collective Member did not receive a Notice. Given the robust Notice program, the lack of any objections to the settlement (including objections to attorneys' fees and costs) further supports the requested fee award.

Fourth, Class counsel achieved substantial results in this case. The settlement payments range from $3,799.16 to $10,785.52, with an average recovery of $7,569.10. [Docket No. 39-1, Fourth Declaration of Joseph D. Sutton ("Fourth Sutton Decl.") ¶ 3.] Under the Agreement, FLSA Collective Members are entitled to receive the full amount of the overtime wages allegedly owed. *Id.* The court previously determined that the relief provided for Class and Collective Members is fair, adequate, and reasonable, especially considering the risks associated with further litigation. *See* Order on Prelim. Mot. at 9-14. The degree of success achieved in this case weighs in favor of awarding Class counsel's requested fees.

Finally, as explained in the following section, the requested percentage of 33% is supported by a lodestar cross-check.

### 2. Lodestar Method

Class counsel calculates its lodestar at $340,090, representing 463.6 hours of work by 5 timekeepers. Fourth Sutton Decl. ¶ 12. The requested rates are $800 per hour for Margain, $800 per hour for Palau, $700 per hour for Sutton, $600 per hour for Trabucco, and $200 per hour for Advocates' case clerk, Alan Jimenez.

"Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The rates requested in this case are within the range of other rates approved in wage and hour litigation in this district. *See Franco*

*v. E-3 Sys.*, No. 19-cv-01453-HSG, 2021 WL 2333851, at *7 (N.D. Cal. June 8, 2021) (approving rates of $700 and $550 for attorneys with 18 and 9 years' experience, respectively); *Joh v. Am. Income Life Ins. Co.*, No. 18-cv-06364-TSH, 2021 WL 66305, at *8 (N.D. Cal. Jan. 7, 2021) (approving rates between $415 and $800 in a wage and hour class action case); *Palana v. Mission Bay Inc. et al.*, No. 13-cv-5235-SI, Docket No. 172 (N.D. Cal. Aug. 12, 2016) (approving Margain's rate of $661 per hour in 2016). Counsel have been awarded their requested rates by state courts. *See* Docket No. 39-2, Second Declaration of Tomas E. Margain ("Second Margain Decl.") ¶ 21 (Margain was awarded a rate of $894 per hour by the Kern County Superior Court in March 2019); Fourth Sutton Decl. ¶ 8 (citing state court cases awarding Sutton $650 and $700 per hour), ¶ 9 (stating that Palau has been awarded rates of $750 and $800 per hour by state courts), ¶ 10 (Trabucco's rate of $600 has been approved by at least one state court). While the court need not and does not decide that the exact rates requested by counsel are reasonable, they are at least within the range of reasonableness required to use the lodestar figure as a cross check. *See Joh*, 2021 WL 66305, at *7 ("Where a lodestar is merely being used as a cross-check, the court may use a rough calculation of the lodestar." (internal quotation marks and citation omitted)). The reported hours spent litigating this case are also not plainly unreasonable.

The requested fee award of $108,322.50 is approximately 32% of the reported $340,090 lodestar, resulting in a substantial negative multiplier. A negative multiplier "strongly suggests the reasonableness of [a] negotiated fee." *Rosado v. Ebay Inc.*, Case No. 12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016) (considering a negative multiplier of .54); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (supporting the reasonableness of class counsel's lodestar on the basis that a negative multiplier "suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel").

In sum, both the percentage-of-recovery and the lodestar analyses support the requested fee award of $108,322.50.

**B.     Costs**

Class counsel requests an award of costs of up to $10,000. At the hearing, counsel confirmed that the costs incurred are $7,687.04, which includes $460 for court and LWDA filing fees, $203.29

9

for research services, $23.75 for mailing fees, and $7,000 for Plaintiff's portion of the mediation costs. Fourth Sutton Decl. ¶ 14. The court finds that these costs are reasonable.

### C. Incentive Award

Plaintiff requests, and Defendant does not oppose, an incentive award of $5,000 to Moreno, the class representative. "The request of $5,000 is reasonable as that amount is the presumptive incentive award in [the Northern District of California]." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019).

The incentive award requested is presumptively reasonable and there are no considerations at this time that would warrant a lower award. Accordingly, the court approves the requested incentive award.

## V. CONCLUSION

For the reasons set forth above, the court grants Plaintiff's motion for final approval and motion for attorneys' fees, costs, and incentive award. Class counsel is awarded $108,322.50 in fees and $7,687.04 in costs. Moreno is awarded $5,000 as an incentive award.

Within 21 days after the distribution of settlement funds and payment of attorneys' fees, class counsel shall file a Post-Distribution Accounting in accordance with the Northern District's Procedural Guidance for Class Action Settlements, *available at* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements. The Post-Distribution Accounting must contain all information listed in the Guidance, and shall be filed with the court and posted on the Settlement Website.

**IT IS SO ORDERED.**

Dated: September 10, 2021



_____
Donna M. Ryu
United States Magistrate Judge